WHITE, STATE AUDITOR, *v.* MILLER, STATE TAX COLLECTOR, *et al.*

(Division A. Feb. 23, 1932.)

[139 So. 611. No. 29759.]

See, also, 160 Miss. 32, 133 So. 144.

**Lotterhos & Travis**, of Jackson, for appellant.

298

**J. H. Sumrall,** of Jackson, for appellee.

Flowers, Brown & Hester, of Jackson, for appellee, American Surety Company.

May, Sanders, McLaurin & Byrd, of Jackson, amicus
curiae.

302

**McGowen, J.**, delivered the opinion of the court.

Appellant, Carl C. White, chief inspector of the state as state auditor, filed his bill in the chancery court of Hinds county against the appellees, W. J. Miller, state tax collector, and American Surety Company of New York, to which bill a demurrer was sustained, and an appeal from the decree in the lower court dismissing the bill is prosecuted here.

The material allegation in the bill is that W. J. Miller, state tax collector, had on hand on September 30, 1929, the end of the fiscal year 1928-29, the sum of sixteen thousand fifty-nine dollars and ninety-eight cents, which was the balance of his commission fund remaining unexpended for expenses and compensations accrued during said year, and that it was his duty thereupon to pay said balance into the state treasury as provided by law; that the said W. J. Miller had failed to pay said sum into the state treasury, but retained the same in said commission fund; and thereafter, and during the fiscal year 1929-30, expended from said balance of funds the sum of twelve thousand one hundred twenty-four dollars and sixty-eight cents in payment of expenses and commissions for the fiscal year 1929-30, which was paid out from his commission fund in payment of expenses for the year 1929-

30 in addition to commissions earned and accrued in that period. Thereafter the tax collector used certain sums in payment of expenses and commissions for the year subsequent to that in which they were earned, and wrongfully used the money by such payment. The tax collector's total expenditure for the fiscal year 1929-30 was thirty-eight thousand one hundred forty-nine dollars and nineteen cents, whereas the amount of commissions actually earned during that fiscal year was the sum of twenty-six thousand fourteen dollars and fifty-one cents. He therefore prayed for a decree therefor against defendants and for ten per cent attorney's fees with interest and penalties.

The demurrer to the bill was to the effect that there was no equity on the face of the bill; and that the bill showed on its face that the tax collector had expended the monies therein sued for according to law.

The question presented to this court for decision is whether the state tax collector may retain the twenty per cent commission allowed by law for the payment of compensation and expenses until the end of his four-year term, or is he required, under the statute controlling, to pay into the state treasury as belonging to the state any balance remaining in his hands at the end of each fiscal year, after he has paid all compensation allowed by the statute, expenses, and attorney fees?

The state auditor's position is that it is the duty of the state tax collector to pay the balance of the twenty per cent commissions collected by him into the state treasury at the end of each fiscal year, that balance being the money remaining in his hands after having discharged his contract with his deputies, paid his expenses, his own compensation, and the attorney fees, such balance in the case at bar being alleged to be twelve thousand one hundred thirty-four dollars and sixty-eight cents.

The state tax collector contends that under the law

it was not his duty to pay in said balance of money remaining in his hands, but that he was allowed to retain it for the purpose, if necessary, of paying expenses, compensations, etc., any time during his term, subsequent to that year; and that he was only required by the controlling statutes to pay in such balance as remained in his hands to the credit of this twenty per cent commission fund at the end of his term.

The particular law involved is chapter 71 of the Laws of the Extraordinary Session of 1928. Section 7055 thereof fixes the term of office of the state tax collector at four years. Sections 7056, 7057, 7058, and 7059 fix the powers and duties of said officer. Section 7060 fixes the limit of time within which said officer may bring suits. Section 7061 specifies how suits may be brought. Section 7062 defines his power to examine books. Section 7063 requires him to report embezzlements of public funds. Section 7064 permits him to bid in land sold under a judgment or decree in his favor, etc.

Section 7065 of the aforesaid chapter, section 6998, Code of 1930, is in the following language: "*To settle monthly*—The state tax collector shall settle monthly with the proper officers, and pay over all moneys collected by him; and he shall make a report to the auditor of public accounts at the end of each fiscal year, giving a full account of all collections by him, and of whom and on whose account collected. For a failure to settle monthly and pay over all collections made by him, he shall be removed from office by the governor."

Section 7066, section 6999 of the Code of 1930, is as follows: "Neither the state nor any county, municipality, drainage district, levee board or other administrative body shall be chargeable with any such fees or expenses on account of any investigation or suit made or instituted by the state tax collector. The state tax collector shall retain twenty per centum of all amounts collected and paid over by him, and of the purchase money of all lands

bid in for the state by him and sold by the land commissioner. Out of the twenty per cent commission allowed by law to such state tax collector, he shall pay all the expenses incident to the discharge of the duties of his office and all attorney's fees, and retain the sum of five thousand dollars ($5000) per annum for his salary, but the compensation of any deputy shall only be paid out of the amounts collected as a result of the services of the said deputy, and the said compensation of the deputy shall be at the rate not to exceed five thousand dollars per annum, provided, that this limitation as to the compensation of deputies shall not apply to commissions collected from defaulting public officers in addition to recovery of principal in which event the deputy at whose instance such recovery is made, may be paid such amount out of the commissions collected from such defaulting officers as the state tax collector may deem proper, to compensate such deputy for the service performed and expense incurred in and about such collections; and the balance of such commissions he shall pay into the state treasury and shall make detailed itemized report to each session of the legislature as to the said account.''

Section 7068, amended as section 7000 of the Code of 1930, is as follows: ''The state tax collector, at the expiration of his term of office shall deliver to his successor all books, papers and documents pertaining to the office. The successor shall allow all suits commenced, except suits or proceedings for the collection or assessments of taxes on agricultural products to be conducted in his name; but the person who commenced the suit shall pay all attorney's fees and expenses thereof, and receive the commissions if any.'' Section 7000 of the Code of 1930 amends this section so as to read (as to the pertinent part under consideration here): ''All pending suits shall be revived and prosecuted in the name of the successor. The twenty per cent commissions legally derived from any

suits thus revived shall be accounted for by the successor as other proceeds from his office, except that out of one-half of any commissions legally derived from any suit thus revived the successor shall pay any deficiency due the former state tax collector or deputy on their salary as provided by law.''

The substantial difference between these sections is that under the Laws of the Extraordinary Session of 1928 the outgoing tax collector received the commissions on, pending suits and was required to pay all attorney's fees and expenses. Under the other section the successor to the retiring officer is required to pay one-half of the commissions legally derived, or a sufficient amount of said one-half to pay any deficiency due the former state tax collector or his deputies for salary as provided by law.

Counsel who have presented this case all realize that the statute is somewhat indefinite as to when, under section 7066, the state tax collector is required to pay the balance of his twenty per cent commissions into the state treasury.

Prior to the enactment of chapter 330 of the Laws of 1924, the twenty per cent commission allowed the state revenue agent was allowed by law to be retained by the state revenue agent from which he paid himself, his deputies, and all his expenses. Hemingway's Code 1917, sec. 7066. In 1924 the legislature reserved to the state the balance of the twenty per cent remaining after said officer had compensated himself to a maximum of five thousand dollars per annum, and his deputies to a maximum of five thousand dollars per annum, his attorney's fees, and all expenses. Chapter 71 of the Laws of the Extraordinary Session of 1928 changed the name of this officer, and he then became the state tax collector. Prior to the enactment of chapters 30 and 84 of the Laws of the Extraordinary Session of 1928, the state revenue agent had never paid any portion of this twenty per cent commission into the state treasury, except the balance re-

maining at the close of his term of office. Prior to 1924 he had made no account to anyone for the twenty per cent commissions. Since the enactment of chapter 30 it has been the custom of the state tax collector to pay the twenty per cent commissions into the state treasury as a special deposit, and make requisitions therefor in payment of his expenses, and compensation to himself, and to his deputies as he saw fit. In the case of Miller v. White, 157 Miss. 114, 126 So. 833, the state auditor sought, by refusal of the state tax collector's requisitions for expense and compensation money, to prevent the withdrawal of any part of this special deposit of commission funds from the state treasury; and upon mandamus this court held that the state tax collector had a right to withdraw these funds as he saw proper; that the disbursement of this twenty per cent commission was his responsibility, that the auditor had no discretion in the matter; and that it was his duty to honor the requisitions of the state tax collector drawn upon that fund for his purposes.

It is a matter of common knowledge, of which this court is well aware, that in the history of this office there have been recoveries so large, and the commissions thereon so great, that public comment was created in criticism of the large amount earned by this office; so that the legislature, in its wisdom, determined to limit the amount which the official could make as revenue agent, and subsequently as state tax collector, and to limit his compensation, and that of his deputies, to a maximum amount, not, however, limiting him in expense account or in attorney's fees. The legislature doubtless thought that by this limitation, placed not only upon the state tax collector, but upon each of his deputies, these officials would thereby become diligent and be forced to earn in fees by their own activities the compensation which should be paid to them for their services. It desired further to reserve to the state what was conceived by

the legislature to be all excess of a fair and reasonable compensation to be paid by the state for the activities of these officers. Prior to the enactment of these restrictions, eighty per cent of the funds collected by the officers was paid promptly into the state treasury, the other twenty per cent became the property of the official, for which he was not required to account to any state authority.

Section 7065 of said chapter provides that the state tax collector shall pay in monthly the collections due the state—in other words, eighty per cent of his receipts. Section 7066 provides in one clause that this officer shall retain the twenty per cent commissions, and in its closing clause that the balance, after making payments as authorized therein, he shall pay into the state treasury, carefully omitting therefrom the word "annually" as we view this statute.

The statutes presented to us for consideration are not complete if a literal construction thereof is invoked. It is a delicate task when a court is called to pass upon an act of the legislature, and deduce therefrom the intention of the lawmaking body, when words which could have been used easily and readily thereby removing obscurity and doubt, are omitted from it. It is, however, the province of the court to declare the spirit and reason of the statute; it is also a cardinal principle of construction that the meaning and intention of the legislature is to be ascertained, if possible, by the court, in order that its will, when made known, may be enforced. We are of opinion that it is pertinent and proper for the court to resort to the history of the statutes with reference to this office and its compensations, and all further pertinent and admissible considerations in order that the true intention of the legislature may be deduced. We are conscious, however, of the fact that we may not substitute our own ideas and our own judgment of the expediency of such policy, but that the pole star is the will and intention of the legislature.

Now, in the case at bar, it is contended, on the one hand, that this statute, properly construed, requires the payment of the balance of money, in the collector's hands, as the property of the state, into the treasury at the end of each fiscal year of his term, while, on the other hand, it is contended that he must pay in this balance at the end of his term of office.

This court has already held in Miller v. White, supra, that the tax collector is not subject to the supervision of the state auditor in the handling and disbursement of the twenty per cent commissions; that the auditor has no discretion in that matter. If construction of the statute appellant here contends for be adopted, requiring the state tax collector to pay in such moneys at the end of each year, it would be impossible to harmonize that construction of section 7068 of the chapter, or as amended in the Code of 1930 (section 7000), with this idea. This section, before it was amended, permitted the state tax collector to receive and retain the entire commission collected on pending suits after the expiration of his term, and to pay his attorney's fees and expenses therefrom. The amendment allows him to retain only a sufficient amount of ten per cent thereof arising from pend n suits at the time he goes out of office to make up *any deficiency* due the retiring tax collector, or his deputies. This deficiency is not limited to the last year of the tax collector's incumbency in office, but is so broad and so plain that it cannot be misinterpreted—meaning, as we view it, that any deficiency due the officer or his deputies arising during his term might be made up from the collections arising from suits pending at the time he goes out of office, limited only by ten per cent thereof.

In the very nature of the case, the state tax collector does not have a volume of collections flowing into his office at stated intervals as do other officers whose compensation is based upon fees. The delay incident to forced collections at the hands of the courts confronts

the officer at the start with a degree of uncertainty and without provision for any funds with which to ascertain defaults and prosecute suits therefor. This would mean that, in some years, the tax collector would pay the expenses of those working under him and his own expenses without compensation and without reimbursement, although the particular year in which no suits were settled might result in another year in a most profitable manner so far as the state's interest is concerned; in other words, it would be to impute to the legislature a desire to destroy the efficiency of this office, and, in fact, so handicap it as to cut off a profitable source of revenue, which the legislature evidently thought was necessary to the proper maintenance of the government. This view would be manifestly unfair to the officer, unjust in a high degree, and most unsatisfactory to both the officer and the state.

The prime interest of the state is in the eighty per cent collections which belong to the state; the interest of the state in the twenty per cent commissions is only incidental and is reserved by the state to prevent an official from earning more than is thought to be commensurate with the service rendered by him, and to prevent an unfair allowance of compensation to this officer as compared to the other officials of the state government. The legislature did not intend to abolish its chance to secure the eighty per cent collections from defaulting or careless taxpayers or officials; the legislature intended that the office should be continued, and that it should be efficient, especially in the matter of securing to the state eighty per cent of such funds. If the legislature was so careful to guarantee this official commissions accruing after the expiration of his term of office, how much more important to the state, and to the carrying out of the intention of the legislature, is it to see that the office is provided with funds from this source sufficient to accomplish its object, during the tenure of the officer. If

we are correct in the conclusion that the legislature intended that during the last year of his term the state tax collector should trench upon the twenty per cent commissions earned by his successor, then it follows that, while the officer would be required to report biannually to the legislature, it did not intend that any moneys remaining at the close of the fiscal year should then be paid into the state treasury as the property of the state. But we think the reasonable, logical, and natural inference to be drawn from the entire statute is that the legislature intended that the balance remaining, if any, at the close of the tax collector's term of office, should then be paid into the state treasury.

Any other conclusion might mean, and probably would, that the office could not be efficiently maintained. We think all the language taken together is susceptible of this construction. By such construction, the state and all parties interested are fully protected, and the prime object of the legislature is accomplished. Failing to put this construction upon the statute, we should be compelled to say that the statute is meaningless because of its ambiguity. This construction makes of the statute a valid, sensible, and just law, and changes the prior existing laws, only to the extent that it effectuates a limitation of the amount of compensation which this official may earn during his term. We must presume that the legislature intended to perpetuate the office for the time being, and that it did not intend to do an injustice. We do not think this statute is devoid of meaning; nor do we think we have revised or amended it. But we do think that it is entirely consonant with legislative intent, in view of the history, attendant circumstances, objects sought to be obtained, and language of the statute to so construe this statute. The court below so construed it, and we are in accord with its view.

Affirmed.