GULLY, STATE TAX COLLECTOR, *v.* HARRISON COUNTY.

(Division A. June 10, 1935.)

[162 So. 166. No. 31767.]

J. H. Sumrall, of Jackson, and Gex & Gex, of Bay St. Louis, for appellant.

O. J. Dedeaux, of Gulfport, for cross-appellants.

Argued orally by **J. H. Sumrall** and **Walter Gex**, for appellant, and by **O. J. Dedeaux**, for cross-appellant.

**McGowen, J.**, delivered the opinion of the court.

In 1932, W. J. Miller, state tax collector, brought his action at law against Harrison county seeking to recover from said county the proportion of privilege taxes levied on gasoline alleged to have been wrongfully distributed by the state auditor to Harrison county which should have been paid to Hancock county. The suit was for gasoline taxes so paid to Harrison county from December 1, 1928, to 1932. The court below tried the case without the intervention of a jury upon an agreed statement of facts and some evidence, and rendered a judgment in favor of the appellant, J. B. Gully, as state tax collector, the suit having been revived in his name for gasoline taxes paid to Harrison county from December 1, 1928, until November 1, 1930, but declined to award a judgment for any sum subsequent to the latter date. From that judgment the state tax collector appeals, and a cross-appeal is filed

by Harrison county as to the judgment rendered against it.

The declaration and proof show that since the 1st day of December, 1928, five large companies distributing gasoline in this state have conducted their business in this manner: They constructed large storage tanks at Gulfport, in Harrison county, Mississippi, where each of them store gasoline in large quantities for sale in this state, and from their several storage tanks they deliver such commodity to the retail dealers and customers in the several counties, and especially in Hancock county. From these storage tanks located in Harrison county, by means of trucks, gasoline was transported to Hancock county and sold and delivered there to retail dealers, which retail dealers paid to the several companies the price of the gasoline plus the excise tax levied by the state auditor, and then sold to the customers and consumers the gasoline, and collected therefrom, in addition to the price of the gasoline, the tax imposed by the state and county thereon, under the statute. The special excise tax on gasoline levied by the county for sea walls was, on proper report thereon, collected by the state auditor and by him distributed to that county.

Harrison and Hancock counties are located on and about the Gulf of Mexico, and have constructed sea walls for the protection of their beach highways, and have issued bonds to pay for same in conformity with the statutes.

The distributors of gasoline, from the New Orleans offices of the several distributors, paid the amount of the state tax thereon promptly upon delivery of the commodity in the city of Gulfport in Harrison county, to the state auditor. Gulfport was selected by these companies as the point of storage because of its shipping facilities.

It is the contention of the cross-appellants that no recovery should be had against Harrison county because,

under the controlling statute, the gasoline tax levied and collected by the auditor in Harrison county had been properly distributed, and that Hancock county was entitled to none of it.

The appellant contends that the court properly awarded a judgment on behalf of Hancock county for the period ending November 1, 1930, but erred in not allowing the further sum subsequent to that date.

There is no controversy as to the amount of the tax, and the number of gallons of gasoline shipped from Harrison county by these distributors and sold in Hancock county.

By chapter 319, Laws of 1924, the Legislature passed an act conferring upon counties bordering or abutting on the beach or shore of any body of tidewater the power to issue bonds to build sea walls to protect their beach highways, giving them power to levy special privilege taxes on gasoline and other like products, for the payment of said bonds and interest, and also provided that these counties, so situated and so issuing bonds, should be entitled to one-half of the sum collected on account of gasoline taxes by the state auditor, which would otherwise have been paid over to the state highway department. Section 8 of said act provides as follows: "Where any county issues bonds under this act for construction, improvement, or protection of any state highway, there shall be paid into the treasury of such county fifty per cent of any license taxes which would otherwise be paid into the state highway fund collected by the state in such county on motor vehicles or drivers thereof, and fifty per cent of any excise taxes levied and collected in such county by the state on gasoline, naphtha, alcohol or other fuel or substance ordinarily used for the operation of automobiles or like vehicles or machines operated by motor power, sold in or shipped into such county for sale therein, which would otherwise be paid into the state treasury to the credit of the state highway fund," etc.

This section was amended by chapter 234, Laws of 1926, by striking out the word "state" in the second line thereof immediately preceding the word "highway," which in nowise affected the general operation thereof.

In order to understand this case, it is necessary to review the legislation imposing a privilege tax on gasoline. Chapter 116, Laws of 1922, imposed a tax of one cent per gallon on any person engaged in the business of distributing or retailing gasoline, to be paid to the state auditor upon monthly reports required to be made by each person subject to the tax. This tax was divided by giving sixty per cent to the highway commission, and forty per cent to the counties for gasoline sold therein.

Section 115, Laws of 1924, amended sections 2 and 3 of chapter 116, Laws of 1922, and fixed a tax of three cents per gallon on all gasoline sold, the tax to be distributed fifty per cent to the counties, and fifty per cent to the state highway commission. The payment to the counties was based upon the proportion the number of the motor vehicles registered in that county bore to the number in the entire state, and hence the amount of the gasoline sold in each county then became unimportant.

In turn, this act was amended by chapter 198, Laws of 1928, by which privilege taxes were imposed upon all gasoline received in this state. Chapter 21, Laws of 1928, Extraordinary Session, was a general re-enactment of the laws of 1922, with amendments, and preserved intact section 8 of chapter 319, Laws of 1924.

Sections 4785 to 4799, Code of 1930, re-enacted gasoline laws as set forth in chapter 21, Extraordinary Session of 1928.

It will be observed that since 1924 the amount of the gasoline tax collected by the state auditor has been unimportant in so far as that amount bore relation to the several counties of the state, except as these coast counties, which were awarded a part of the state highway fund in addition to the amount which they received up-

on the number of registered motor vehicles. The state auditor was required to collect the sea wall gasoline tax in each coast county on the gasoline sold therein from the dealers and distributors, and, upon so doing, to distribute it in accordance with the levy of excise taxes in the counties so interested during this period. The board of supervisors of Harrison county imposed a sea wall tax of two cents per gallon on gasoline, while in Hancock county there was imposed a tax of three cents per gallon, and the dealers and distributors were required to make a report of sales in these counties to the state auditor in order that he might make proper distribution thereof.

The question here presented involves the construction of section 8, chapter 319, Laws of 1924, the applicable part of which we have set forth, supra. Stripping it down to its controlling part, in so far as the question here is involved, it will read, ''There shall be paid into the treasury of such county . . . fifty per cent of any excise taxes levied and collected in such county . . . on gasoline . . . sold in or shipped into such county for sale therein, which would otherwise be paid into the state treasury to the credit of the state highway fund. . . .''

While there is some confusion in the language of the statute, it seems to be obvious that the Legislature intended for each county to have its part of the tax on gasoline sold therein, and did not intend that one of the counties, under this section, should receive the benefit of any tax on gasoline sold in the several other counties on the coast.

Although the language used in the first part, ''levied and collected in such county'' was meant to apply to the general levy of the tax on the class of commodity intended to be embraced within its terms, the language, ''sold in or shipped into such county for sale therein,'' is a clear statement of the intention of the Legislature that each

county should have distributed to it its part of this tax on gasoline, and this is true in view of the fact that the Legislature provided for a method by which the state auditor would be fully apprised of the number of gallons sold in each particular county on the coast which had levied a special tax to pay for sea walls. While the words, "sold in or shipped into such county for sale therein," have reference to the manner of distribution rather than the source of the tax, the proceeds of the gasoline tax collected by the state auditor should have been distributed by him to each such county on the basis of the number of gallons of gasoline sold, or shipped therein for sale, no matter where the gasoline came from. It is clear, by this language, that the Legislature did not intend that one county of the several should be permitted to receive all of this tax, exclusive of the weaker counties which had created debts by erecting sea walls, and had been compelled to levy a higher excise tax upon gasoline to pay for same.

The court below so construed the statute, and we are of the opinion that it was correct, and that the contention of the cross-appellant that the words "levied and collected" should not control and should not be superimposed upon 'the words "shipped into such county for sale therein," and on the cross-appeal the case is affirmed.

However, on the direct appeal, it is the contention of the appellant that section 8 existing prior to the adoption of the code was not affected by the change thereof now appearing in said code.

The laws of 1928, Ex. Sess., are, in effect, re-enacted as to method and manner of imposition of the excise tax on gasoline, and in section 4795, Code of 1930, there is found the manner in which the excise taxes on gasoline should be apportioned by the state auditor, fifty per cent to the highway commission and fifty per cent to the counties, and then follow these words: "That this section shall be administered in connection with the last two sec-

tions in the chapter on Sea Walls which two sections shall be construed, and shall have the same force and effect, as if here made a part of this section.'' Referring to the last section, 6931, of the chapter on sea walls, we find that it has no reference to the matter of gasoline excise taxes, and at the time section 4795 was adopted, sections 6929 and 6930 were the last two sections of said chapter. Section 6929 appears to be a re-enactment of chapter 234 of the laws of 1926 in an amended form. Naphtha, alcohol, etc., are omitted from and not included in the commodities on which the tax is to be imposed. It is confined, alone, to gasoline, and the words ''shipped into such county for sale therein'' are not brought forward, so that the applicable part reads as follows: ''Fifty per cent of any excise taxes levied and collected in such county by the state on gasoline which would otherwise be paid into the state treasury to the credit of the state highway fund.''

The state tax collector urges upon us that, notwithstanding this clear-cut amendment of the statute by the Legislature, we should read into it something omitted, but he fails to mention what we should do with naphtha and the other commodities omitted therefrom.

The language being plain, there is nothing in the history of the legislation by which we would be warranted to read language into the statute which it does not contain, thereby allowing Hancock county to recover excise taxes levied and collected in Harrison county subsequent to the adoption of section 6929. We do not know why the Legislature omitted these words from the statute, but in view of the fact that they omitted naphtha, alcohol, and other like substances from the statute, we are not authorized, by judicial construction, to rewrite it. On examination of the ''dummy code'' in connection with this section, we are led to believe, just or unjust, fair or unfair, that the Legislature intended to adopt the statute as it now appears as section 6929, Code of 1930, and that from thenceforth the county in which the excise tax

was levied and collected should receive the benefit therefrom. It might appear to us to be unfair, but it is too clearly the legislative will for us to undertake to apply the rule adopted in White v. Miller, 162 Miss. 296, 139 So. 611. The Legislature is presumed to know the effect which its former laws had, and, presumably, had some good reason for making the change. It was the manifest intention of the Legislature to omit naphtha therefrom, and it is equally clear that they intentionally omitted therefrom the words "sold in or shipped into such county for sale therein."

We are, therefore, of the opinion that the court below was correct in holding that Hancock county was not entitled to recover gasoline excise taxes levied and collected in Harrison county after the adoption of section 6929, Code of 1930.

Affirmed on direct and cross-appeal.