## In re Validation of Road Protection Bonds of Hancock County.

(Division B. Dec. 5, 1938.)

[184 So. 815. No. 33530.]

728

Edward I. Jones, of Bay St. Louis, for appellants.

George R. Smith, of Gulfport, and W. J. Gex, Jr., and Robert L. Genin, both of Bay St. Louis, for appellee.

Argued orally by **Edward I. Jones**, for appellant, and by **W. J. Gex, Jr., George R. Smith** and **Robert L. Genin**, for appellee.

**McGehee, J.,** delivered the opinion of the court.

Under the provisions of chapter 319 of the Laws of 1924, as amended by chapter 234 of the Laws of 1926, the boards of supervisors in counties along the gulf coast of the state were required to erect and maintain all necessary sea-walls for the protection of the public high-

ways against damages that would be otherwise occasioned by tide-waters being driven against the same in consequence of storms; and road protection bonds, generally known as sea-wall bonds, were authorized to be issued for that purpose. It was contemplated by the Act, as shown by the terms and provisions thereof, that these bonds should be repaid primarily from funds derived from license taxes and taxes on gasoline and other fuel used in the operation of motor vehicles and other machines driven by motor power, instead of from funds raised by an ad valorem tax.

Accordingly, Hancock County issued and sold $1,250,-000 of such bonds. The annual installments of principal and all accrued interest were kept paid, without the necessity of borrowing money for that purpose, until the year 1936, when it became necessary to issue $60,000 of refunding bonds in order to avoid default being made in the payment of the annual installments then due, or soon to become due, under the original issue; and it likewise became necessary to levy an ad valorem tax—five mills per annum for the past three years—to supply the funds required.

On April 18, 1938, there remained outstanding and unpaid on these sea-wall bonds, including the $60,000 of refunding bonds, the principal sum of $1,043,000, when the refunding bonds now in question in this case were authorized to be issued for said amount, at a less rate of interest per annum than the original issue and providing for greatly reduced annual installments of maturing principal.

They were issued under chapter 143 of the Laws of 1934, as amended by chapter 279 of the Laws of 1936, and were to bear date of May 1, 1938, and mature serially, beginning on May 1, 1943, and running to May 1, 1963, inclusive, at 5% interest per annum; and after being duly examined and approved by the State Bond Attorney, the same were validated by decree of the chancery court, over the objections filed by the appellant Norton Haas

and others, and from which validation decree they appeal.

The validity of the issuance of the bond is challenged on the following grounds: (1) That section 5 of the act of 1934, supra, as amended by the act of 1936, required the bonds to begin maturing serially at a date not more than five years from the date of the passage of the act of 1934, and not five years from the date of the issuance of the bonds; (2) that the minutes of the board of supervisors did not affirmatively show that funds available from taxes were not sufficient to pay the outstanding bonds and interest at the maturity thereof; (3) that the necessary funds to pay the bonds next maturing, together with the annual interest on all bonds then outstanding, were on hand; and (4) that no bonds were in default at the time of the issuance of the refunding bonds here in question.

Section 5 of the Act, above referred to, as amended, does in fact provide, inter alia, that: "All such bonds shall be made to mature serially, beginning not more than five (5) years and running not longer than thirty (30) years *after this date*" (Italics ours); and it then proceeds to specify what per cent of the total issue shall mature the first six years, "beginning in the fifth year after the date of such bonds." Thus it will be seen from the phrase, last above quoted, that the words "after this date," previously used in the statute, and which we have italicized, were intended to read *after their date*. These words of the Act were amended, so as to read "after their date," by chapter 74 of the Laws of 1938 (Ex. Sess.). This amendment was not passed, however, until August 20, 1938. But, it was said in the case of Gandy v. Public Service Corporation, 163 Miss. 187, 140 So. 687, that: "The true meaning of a statute, when ascertained, will be enforced by the courts, even to the extent of correcting language therein used." And in the case of Bobo v. Levee Commissioners, 92 Miss. 792, 46 So. 819, the word "not" was read out of section 3 of

chapter 97 of the Laws of 1908, in order to carry out the intent and purpose of the legislature in its enactment. See, also, Briscoe v. Anketell, 28 Miss. 361, 61 Am. Dec. 553, and State v. Louisville, etc., R. Company, 97 Miss. 35, 51 So. 918, 53 So. 454, Ann. Cas. 1912C, 1150. Moreover, if the Act in question had intended to require all refunding bonds issued thereunder to begin maturing in not more than five years after its passage, instead of five years from the date of their issuance, then it would necessarily follow that bonds issued immediately prior to the expiration of five years from the passage of the Act would mature before ample opportunity is afforded the governing authorities to dispose of them. Again, we find nothing in the statute indicating a purpose on the part of the legislature to limit the period of its operation as a law, or the time within which outstanding bonded indebtedness may be refunded under any of its terms and provisions, where the funds available from taxes are not sufficient to pay such indebtedness when due. Section 7 of the Act provides that: "the governing authority may, at any time or times, exercise the powers granted by the act in the refunding of outstanding bonds . . . , provided they are issued within three years after the date of the resolution or order providing therefor."

Neither do we think it necessary in any case that the board of supervisors shall adjudicate that the funds available from taxes will not be sufficient to pay the *next* maturing bond and all accrued interest, nor that any bond is then in default, as a condition precedent to its right to issue refunding bonds; and especially where the opportunity presently exists to issue and sell, or to issue and exchange with the holder or holders of the original bonds, the refunding bonds at a cheaper rate of interest and in greatly reduced principal installments per annum, when it appears certain that a failure to do so would result in the already high ad valorem tax rate of 55 mills in the county being increased to enable the

board to meet future installments maturing subsequent to the current year. Section 4 of chapter 143 of the Laws of 1934 expressly provides that: "The governing authority of any political subdivision, may, . . . issue the bonds of such subdivision for the purpose of refunding any bonded indebtedness of such subdivision now or hereafter outstanding, and whether such bonded indebtedness shall at the time of such refunding be due or to mature in the future; . . . and such bonds may be issued in sufficient amount to pay and retire any of the then outstanding bonds whether matured or to mature in the future, . . ."

It is disclosed by the testimony of the only witness in the case that the board of supervisors will need approximately $94,000 in 1939 and $106,000 in 1940 to meet the payments due on the original bond issue, while the amount that would be required to take care of the annual maturities of the refunding bonds would not exceed $81,000 per year; and that these reduced payments could be met without the necessity of levying any ad valorem taxes.

It is urged by the objectors, however, that the board of supervisors transferred, without authority of law, the sum of $24,000 from the road protection bond fund to another county fund and thereby brought about a deficit in the funds available for meeting the amount due on the original bond issue on November 1, 1938; that, but for this act, there would have been no necessity for issuing refunding bonds at the time the same were authorized by the board of supervisors to be issued; and that wherefore the refunding bonds should not be validated. However, the authority to issue the refunding bonds in question would have existed even though such transfer had not been made. Conceding, for the sake of argument alone, that the taxpayers of the county would be entitled to have this $24,000 returned to the road protection bond fund under a proper proceeding in that behalf, and that when so transferred the funds then available would be

sufficient to meet the payment due on the original bond issue on November 1, 1938, the fact remains that the board of supervisors would nevertheless have been authorized to issue the refunding bonds in order to avoid default being made as to future installments due.

In authorizing the refunding bonds to be issued the board of supervisors adjudicated that the revenue available for the payment of the maturing bonds and interest would be inadequate in the future; that to meet such deficiency it would be necessary to levy an increased ad valorem tax above the fifty-five mills then being collected, thereby imposing upon the taxpayers a burden such as would result in greater delinquencies in the payment of taxes; and further recited in its order all other necessary jurisdictional facts to show both the authority and what the board conceived to be the expediency of issuing the refunding bonds in question.

From the foregoing conclusions, it therefore follows that the decree of the court below in validating the refunding bonds in question should be affirmed.

Affirmed.