McCULLEN, et al. *v.* STATE ex rel. ALEXANDER.

Apr. 13, 1953

No. 38814 27 Adv. S. 33 63 So. 2d 856

*Jas. T. Kendall,* Assistant Attorney General, for appellant McCullen presented an argument under three topics as follows:

*Avery & Putnam,* for appellee Hinds County, *Sillers & Roberts,* for appellee Bolivar County, *Roberson, Luckett & Roberson,* for appellee Coahoma County, *Geo. W. Currie* and *Hannah, Simrall & Aultman,* for appellee Forrest County, *Geo. R. Smith, Jo Drake Arrington* and *Billy Meadows,* for appellee Harrison County, *Beard, Pack & Ratcliff,* for appellee Jones County, *J. V. Gipson,* for appellee Lauderdale County, *Means Johnston,* for appellee Leflore County, *Neill, Clark & Townsend,* for appellee Sunflower County, and *Hilton Waits,* for appellee Washington County presented an argument under eight topics as follows:

*Henley, Jones & Woodliff,* for appellant Copiah County; *B. D. Statham,* for appellant Pike County; *J. H. Holloman,* for appellant Lowndes County; *T. F. Paine,* for appellant Monroe County; *W. F. Latham,* for appellant Clarke County; *J. Hollis Brown,* for appellant Itawamba County; *J. A. Phillips,* for appellant Noxubee County; *Newton & Blass,* for appellant Stone County; *W. H. Watkins, Jr.,* for appellant Walthall County; *Morse & Morse,* for appellant Pearl River County; and *B. H. Loving,* for appellant Clay County in which the additional point was raised by some of them that the district attorney was not authorized to act for Hinds County, the argument on this point as made by Loving being as follows:

HALL, J.

The State of Mississippi, on the relation of Julian P. Alexander, Jr., District Attorney for the Seventh Circuit Court District, for the use of Hinds County, Mississippi, brought this suit for a writ of mandamus to compel Guy McCullen, Motor Vehicle Comptroller of the State of Mississippi, to pay over to Hinds County certain funds, as more fully discussed hereinafter, out of the gasoline tax collections in his hands. Pearl River and Stone Counties voluntarily appeared and on their motion were allowed to intervene as parties defendant. Upon a plea of nonjoinder of necessary parties an order was entered making all other counties of the State parties to the proceeding. Some appeared and aligned themselves with the petitioner and others appeared and answered as defendants.

By demurrer the question was raised that the district attorney is not authorized to bring such a suit. This demurrer was overruled and that action of the lower court is the basis of one of the assignments of error and we shall dispose of it first. Two main reasons are argued in support of the contention that the district attorney had no right to bring the suit. One is that he is prohibited from so doing because the matter involved is of state-wide interest. The other is that the district attorney in this case is serving Hinds, Madison and Yazoo Counties, and that the interest of Hinds County conflicts with the interest of Madison and Yazoo Counties.

In support of the first reason appellants rely upon the cases of Capitol Stages, Inc. v. State Ex Rel. Hewitt, District Attorney, 157 Miss. 576, 128 So. 759, and Kennington-Saenger Theatres, Inc. v. State Ex Rel. District Attorney, 196 Miss. 841, 18 So. 2d 483. The first mentioned case was an injunction suit which was instituted in the chancery court and it involved the matter of the use of one of the state highways from one end of the state to the other; the court pointed out that the matter

was of state-wide interest and then discussed in detail the duties of the attorney general and a district attorney and concluded that there was no authority in a district attorney for the conduct of any litigation except such as is authorized by statute, his office being of statutory origin and not of common law origin as was the office of attorney general. The second mentioned case was a quo warranto suit brought by the State on the relation of the district attorney for forfeiture of the defendant's franchise and right to do business throughout the state because of the violation of a criminal statute in one county; the court pointed out that it was not the intention of the legislature to confer as large powers on district attorneys as are possessed by the Attorney General and that a holding to the contrary would in some cases lead to such a conflict of authority between the two officers as would result in the destruction, instead of promotion, of the public interest; consequently it was held that a district attorney did not have the right to prosecute a quo warranto proceeding which would forfeit the corporation's right to engage in business throughout the State.

We are not here dealing with an injunction suit or with a quo warranto suit. ▮▮▮ This is a proceeding by mandamus and is expressly authorized by Section 1109, Code of 1942, which provides ''On the petition of the state, by its attorney general or a district attorney, in any matter affecting the public interest, or on the petition of any private person who is interested, the writ of mandamus shall be issued by the circuit court, commanding any inferior tribunal, corporation, board, officer, or person to do or not to do an act the performance or omission of which the law specially enjoins as a duty resulting from an office, trust, or station where there is not a plain, adequate, and speedy remedy in the ordinary course of law.'' In the case of State Ex Rel. Cowan, District Attorney, v. State Highway Commission, 195 Miss. 657, 13

So. 2d 614, this Court had the quoted statute under consideration. That case involved the right of Hancock County to reimbursement for its proportionate share in the value of a bridge connecting Hancock and Harrison Counties which had been taken over by the State Highway Commission and the contention was made that under the holding in the Capitol Stages case, supra, the suit could be brought only by the Attorney General since the matter was of state-wide interest because other counties were in the same sitûation as Hancock County. In disposing of the contention this Court pointed out that under our statute it is the duty of the Attorney General to advise and give opinions in writing to the Highway Commission and that he was in fact representing that body in the case, and it was said: ''Therefore, if these contentions are upheld, Hancock County is without a remedy to enforce whatever rights it may have * * * and it cannot be said, with reason, that it is also the duty and power alone of the Attorney General to represent the county in this litigation. * * * The right to bring this action, under the facts and circumstances here existing, is not in the Attorney General exclusively; Cowan, the district attorney in the second judicial district, also has such right.''

By Section 3834, Code of 1942, it is made the duty of the Attorney General to give his opinion in writing to any state officer, department or commission. The record in this case shows that he did give his opinion to the Motor Vehicle Comptroller as to the meaning of the statute hereinafter to be discussed and he appeared in the lower court and in this Court as the attorney representing the Comptroller. It is unthinkable to hold that he should also appear on the opposite side of this litigation and represent Hinds County and that if he should decline to do so the county is left without any remedy. Moreover, while a decision of this case is of state-wide interest and will ultimately affect all the counties of the

State, it is nevertheless a fact that the only right herein sought to be adjudicated is the right of Hinds County to a larger share in the distribution of the gasoline tax than the Motor Vehicle Comptroller is willing to concede, acting upon the advice and written opinion of the Attorney General. In the Cowan case, supra, only the right of Hancock County was sought to be adjudicated, notwithstanding the fact that a decision of that right would ultimately affect a large majority if not all of the counties in the State, and we conclude that under the holding in that case the appellants' first reason in support of the demurrer is not well taken.

In support of the second contention that the district attorney cannot maintain this suit appellants rely upon that part of Section 3920, Code of 1942, reading as follows: "It shall be the duty of the district attorney to appear in the circuit courts and prosecute for the state in his district all criminal prosecutions and all civil cases in which the state or any county within his district is interested; but if two or more counties are adversely interested, the district attorney shall not represent either." It is argued that Hinds County is interested adversely to Madison and Yazoo Counties, all three of which are in the seventh circuit court district, and that for this reason the district attorney cannot represent Hinds County. We have already quoted herein from Section 1109, Code of 1942, to the effect that a district attorney is specifically authorized to file a petition for mandamus in any matter affecting the public interest. Section 3920 is a general statute and Section 1109 is a specific statute. In Greaves v. Hinds County, 166 Miss. 89, 145 So. 900, it was held that statutes which deal with the same subject matter, although in apparent conflict, should, so far as reasonably possible, be construed in harmony with each other so as to give force and effect to each, and it was further held that where a general statute, if standing alone, would include the same subject matter as a

special statute, the special statute will ordinarily be regarded as a qualification of the general statute. Furthermore, as we have already pointed out herein, the only right sought to be adjudicated in this suit is the right of Hinds County to a larger share in the distribution of the gasoline tax than the Motor Vehicle Comptroller is willing to concede. The rights of Madison and Yazoo Counties are involved only indirectly; no relief is sought against them. While civil cases as a general class are covered by Section 3920, mandamus suits are covered by Section 1109 and are therefore an exception to Section 3920. We are therefore of the opinion that appellants' second reason in support of the demurrer is not well taken and that the lower court was correct in overruling it.

We now reach a consideration of the case upon the merits. The petition for mandamus was filed May 6, 1952, and an amendment thereto was filed May 23, 1952, and an amended petition was filed June 2, 1952. It was alleged therein that under the laws of Mississippi (without mentioning any specific law) Hinds County should have received from the Comptroller on May 1, 1952, the sum of $56,464.34, but that he actually paid only $37,-112.47, which made a total of $190,000.00 received by Hinds County during the year 1952, leaving a balance of $19,351.87 unpaid on the distribution made on May 1, 1952, which the Comptroller has refused to pay, and that the Comptroller has notified Hinds County that he does not intend to pay it anything further during the year 1952. The prayer was for the issuance of a writ of mandamus commanding the Comptroller to forthwith pay to Hinds County the sum of $19,351.87 as the remainder of its share in the gasoline tax distribution due May 1, 1952, and to likewise pay its share in the distribution to be made on or about June 3, 1952. The petition set forth the basis for computation of the amount due the county in accordance with Chapter 287, Laws of 1952, which

amended Chapter 473, Laws of 1950, which, in turn, amended Section 38 of Chapter 264, Laws of 1946. Without setting out the 1952 amendment in detail, the general scheme is that out of the gross amount of gasoline tax collected by the Comptroller he shall first pay over to the State Treasurer each month one-sixth of the principal and interest due on the next semi-annual payment of bond and interest due from gasoline tax revenues which shall go into the highway bonds sinking fund; next he shall deduct from the gross amount the sums paid as refund of tax on gasoline used for agricultural, maritime, industrial, domestic and non-highway purposes, and he shall also deduct the operating expenses of the Comptroller's office; the remainder shall be divided on the basis of nine-fourteenths to be allocated to the highway department and five-fourteenths to be returned to the counties on the following basis: one-third shall be paid to the counties in the proportion which the number of square miles of each county bears to the total square miles in the state; one-third shall be paid to the counties in the proportion which the population of each county bears to the total population of the state as shown by the last preceding Federal census; and one-third shall be paid to the counties in the proportion which the number of the registered motor vehicles of each county bears to the total number of registered motor vehicles of the state. The petition alleged that, under the aforesaid formula for computation of the amount of gasoline taxes to be paid over to the counties, Hinds County was entitled to receive from the Comptroller the amount above stated.

Answers were filed to the petition wherein it was alleged that said Chapter 287, after setting forth the above stated basis for distribution of the gasoline tax to the counties, contains the following limitation: "provided, however, that the total sum allocated to any one county shall not exceed the sum of $190,000.00, and that all sums

in excess of $190,000.00, which would accrue to any county in accordance with the foregoing provision, shall be divided equally between all counties which receive less than the sum of $190,000.00, and provided that the aforesaid division shall not operate to award to any county more than the aforesaid sum, and any sum accruing to any county in accordance with the aforesaid division, in excess of the sum of $190,000.00, shall be divided equally between the counties receiving less, as hereinabove provided.'' It was alleged in the answer of the Comptroller that, while the quoted limitation of $190,000.00 to be paid to any one county is silent as to the period of time when the limitation applies, it was nevertheless the intention of the legislature to make the same applicable on an annual basis for each calendar year, and there was attached as an exhibit to the answer an opinion of the Attorney General to this effect.

Upon the hearing the trial court held that the quoted limitation is utterly void and entered a judgment to that effect and further directed the issuance of the writ of mandamus as prayed for, from which action this appeal is prosecuted. There is squarely presented for our decision the question as to what was the legislative intention in said limitation, particularly as to what period of time the same applies and from what date such period of time shall be computed.

In reaching this decision there are certain well recognized rules of statutory construction which are to be considered, some of which we shall state. ''In construing statutes, not only the language but the purpose and policy which the Legislature has in view must be considered, and the Court in construing a statute will give effect to such purpose and policy, though the interpretation may go beyond the letter of the law. Smith v. Chickasaw County, 156 Miss. 171, 125 So. 96, 705.'' Sheffield v. Reece, Sheriff, 201 Miss. 133, 143, 28 So. 2d 745. ''In construing statutes, the chief desire of the

courts is to reach the real intention of the Legislature, and knowing this to adopt that interpretation which will meet the real meaning, though such interpretation may be beyond or within, wider or narrower, than the mere letter of the statute. Unthought of results must be avoided if possible, especially if injustice follows, and unwise purpose will not be imputed to the Legislature when a reasonable construction is possible.'' Zeigler v. Zeigler, 174 Miss. 302, 310, 164 So. 768. ''Legislative intent as an aid to statutory construction, although often elusive to the perception of unaided vision, remains nevertheless the pole star of guidance.'' Quitman County v. Turner, 196 Miss. 746, 759, 18 So. 2d 122. ''The court in construing a statute must seek the intention of the Legislature, and, knowing it, must adopt that interpretation which will meet the real meaning of the Legislature.'' Beard v. Stanley, 205 Miss. 723, 732, 39 So. 2d 317. ''In the construction of a statute the object is to get at its spirit and meaning, its design and scope; and that construction will be justified which evidently embraces the meaning and carries out the object of the law, although it is against the letter and the grammatical construction of the act.'' Ott v. State, Ex Rel. Lowery, 78 Miss. 487, 500, 29 So. 520. ''In construing a statute to give effect to the intent or purpose of the Legislature, the object of the statute must be kept in mind, and such construction placed upon it as will, if possible, effect its purpose, and render it valid, even though it be somewhat indefinite.'' Thornhill v. Ford, 213 Miss. 49, 65, 56 So. 2d 23. ''Words or phrases may, however, be supplied by the courts and inserted in a statute, where that is necessary to obviate repugnancy and inconsistency in the statute, complete the sense thereof, and give effect to the intention of the legislature manifested therein. The rule prevails where words have been omitted from a statute through clerical error, or by accident or inadvertence. The rule is especially applicable where such

application is necessary to prevent the law from becoming a nullity." 50 Am. Jur., Statutes, Sec. 234, pps. 222-223. "Notwithstanding the general rule against the enlargement or extension of a statute by construction, the meaning of a statute may be extended beyond the precise words used in the law, and words or phrases may be altered or supplied, where this is necessary to prevent the law from becoming a nullity." 50 Am. Jur., Statutes, Sec. 357, p. 361.

In addition to what we have heretofore quoted from Chapter 287, Laws of 1952, the act further provides that a certain portion of the distribution to the counties shall be used in meeting payments on the road and bridge bonds of the county, if any, and the remainder in the construction and maintenance of the public highways, bridges or culverts of the county. The funds received by each county are thus definitely ear-marked. The title of Chapter 287 declares as its purpose "to provide a more equitable distribution of the gasoline tax now being refunded to the various counties of this state." The Legislature evidently had in mind that a large and heavily populated county, like Hinds County, with a large registration of motor vehicles, would receive considerably in excess of a half million dollars a year, in the absence of some limitation on this amount, and that this would enable it to levy only a small millage tax for road and bridge purposes, while many of the poorer and less populated counties would receive only about one-seventh as much and would be compelled to levy for road and bridge purposes the maximum ad valorem tax of seven mills. The Legislature no doubt had in mind further that wealthy counties like Hinds already have a large number of hard-surfaced roads and a vast majority of its other roads improved by gravel surface, while some of the poorer counties have no hard-surfaced county roads and comparatively few roads that are improved to any extent. Unquestionably it must be con-

ceded that these considerations were in the mind of the Legislature when it determined that there should be a more equitable distribution of the gasoline tax to the counties. It must be borne in mind that the excise tax on gasoline is levied and collected by the State and belongs to the State; the State can keep all of it, and it is a matter of grace only with the Legislature that a portion of the tax is distributed to the counties; in other words, no county has any vested right in any portion of the gasoline tax money except such right as the Legislature may grant, and the Legislature has the power to distribute a portion of the tax in any manner, upon any basis, and under any formula which it may prescribe.

Under our statutory scheme of county government each county operates on the basis of a fiscal year commencing on October 1 and ending on September 30. Furthermore, counties operate under a budget adopted at or prior to the beginning of each fiscal year; under this budget the board of supervisors must specify what amounts are expected to be expended for road and bridge purposes and also what anticipated sources of revenue there are whereby the funds will be available to meet the anticipated expenditures. Chapter 287 was approved April 10, 1952, as Senate Bill No. 580. The Legislature must have recognized that a limitation of $190,000.00 on the gasoline tax distribution to each county would seriously impair the anticipated revenue of a few of the larger counties and disrupt their budgets and consequently it passed and there was approved just six days later, on April 16, 1952, Chapter 209, Laws of 1952, as House Bill No. 1016. It refers to and must be considered in connection with Senate Bill No. 580. It provides that the boards of supervisors of all counties whose distribution and payment from the amount of state gasoline tax returned to the counties has been, or will be, reduced as a result of the passage of Senate Bill No. 580, are authorized and empowered to issue bonds, negotiable notes, or other

evidences of indebtedness, for the payment of the principal of and interest upon all road and bridge bonds of the county which will mature, accrue, or become payable prior to January 1, 1953, and for the purpose of providing funds for the maintenance and/or construction of the roads and bridges of said counties during the fiscal year ending September 30, 1952, where the amounts available for such purpose will be less than the budgeted amount therefor as a result of the reduction of the county's distribution of the state gasoline tax.

The first question which confronts us in connection with the limitation contained in Chapter 287 is this: Could it be and is it reasonable to hold that the Legislature intended to provide that each county for all time to come should receive a total of $190,000.00 from the gasoline tax distribution and no more? If that were the legislative intent then Chapter 209 is meaningless when it provides only for other revenues by the county to meet bond and interest payments falling due prior to January 1, 1953, and to maintain and construct the county roads for the remainder of the fiscal year ending September 30, 1952. Literally construed, the $190,000.00 limitation on the distribution to each county is for all time to come, but it will be at once seen that if a literal construction is adopted there will soon be accumulated in the hands of the Motor Vehicle Comptroller a tremendous excess of that portion of the gasoline tax collections which the Legislature has solemnly declared shall be distributed to the counties of the state, and the distribution will soon end with no disposition made of this excess. A literal construction of the act would shortly lead to an absurdity which, under the rules of statutory construction, we cannot attribute to the Legislature.

If we should say that the $190,000.00 limitation should be applied monthly, then the act is again an absurdity and meaningless for according to the record no county in the state receives that much monthly out of the distribution.

Since all counties in the state operate upon an annual basis we must conclude that the Legislature intended that the $190,000.00 limitation on the amount to be received by each county should be applied annually. Such a construction makes the act sensible and workable and it does no violence to the act to so interpret it and to, in effect, write into the act the word "annually" immediately following the limitation of $190,000.00. Under the rules of statutory construction there is ample precedent for such interpretation. In the case of Commonwealth v. Morris, et al., 176 Mass. 19, 56 N. E. 896, 897, the Supreme Judicial Court of Massachusetts, whose decisions are frequently followed by this Court, had under consideration an act of that state which prohibited any person, corporation or partnership engaged in the business of making loans, from making "any loan secured by mortgage or pledge of household furniture or other personal property exempt from attachment, or by assignment of wages for personal service, for less than two hundred dollars at a rate of interest greater than twelve per cent. without having first obtained a license for carrying on such business in the city or town in which such business is transacted." The court said: "It is next contended that the statute is silent as to the period of time for which the charging of more than 12 per cent. is unlawful, and that therefore the statute is vague and uncertain. But we are of the opinion that the meaning is plain, and that the words 'per annum' or 'for a year' are to be understood."

In the case of White, State Auditor, v. Miller, State Tax Collector, 162 Miss. 296, 139 So. 611, our own Court had under consideration an act of the Legislature limiting the amount of compensation which might be retained by the State Tax Collector out of the income of his office as compensation for his services. The State Auditor contended that the surplus in the hands of the State Tax Collector should be paid over each year, and the State

Tax Collector contended that it should be paid over at the end of his term. The statute was silent as to when such payment should be made. This Court adopted the contention of the State Tax Collector and in so doing it announced the following principles which are here applicable: ''The statutes presented to us for consideration are not complete if a literal construction thereof is invoked. It is a delicate task when a court is called to pass upon an act of the legislature, and deduce therefrom the intention of the lawmaking body, when words which could have been used easily and readily thereby removing obscurity and doubt, are omitted from it. It is, however, the province of the court to declare the spirit and reason of the statute; it is also a cardinal principle of construction that the meaning and intention of the legislature is to be ascertained, if possible, by the court, in order that its will, when made known, may be enforced.'' The Court then held that the State Tax Collector should turn over the surplus in his hands at the end of his term and said further: ''Any other conclusion might mean, and probably would, that the office could not be efficiently maintained. We think all the language taken together is susceptible of this construction. By such construction the state and all parties interested are fully protected, and the prime object of the legislature is accomplished. Failing to put this construction upon the statute, we should be compelled to say that the statute is meaningless because of its ambiguity. This construction makes of the statute a valid, sensible, and just law, and changes the prior existing laws only to the extent that it effectuates a limitation of the amount of compensation which this official may earn during his term. We must presume that the legislature intended to perpetuate the office for the time being, and that it did not intend to do an injustice. We do not think this statute is devoid of meaning; nor do we think we have revised or amended it. But we do think that it is entirely

consonant with legislative intent, in view of the history, attendant circumstances, objects sought to be obtained, and language of the statute to so construe this statute.''

There are numerous Mississippi cases where this Court has declined to give a literal construction to a statute or to declare it void because of some omission therein. In the case of Smith v. McCullen, State Land Commissioner, 195 Miss. 34, 13 So. 2d 319, the Court had under consideration Chapter 150, Laws of 1942, which authorized a mineral lease on sixteenth section lands ''where such land was included in the Choctaw purchase.'' The question presented was whether this statute authorized a mineral lease of sixteenth section lands in Pearl River County which were not in the Choctaw purchase and it was held that it was the intention of the Legislature to include the sixteenth section lands in Pearl River County even though they lay outside the Choctaw purchase. In Quitman County v. Turner, supra, we declined to construe a statute literally as written notwithstanding the fact that it was ''clear, grammatical, and without patent ambiguity'' as written. In Gandy v. Public Service Corporation of Mississippi, 163 Miss. 187, 140 So. 687, the Court construed Section 1508, Code of 1930, so as to write into the statute the word ''and''. In the case of In Re Validation of Road Protection Bonds of Hancock County, 184 Miss. 727, 184 So. 815, this Court had under consideration Chapter 279, Laws of 1936, and held that the words ''after this date'' as contained in the statute should be construed to read ''after their date''. In the case of State v. Ware, 102 Miss. 634, 59 So. 854, this Court had presented for construction Section 1110, Code of 1906, and struck from the statute the word ''such''. In the case of Rosenberry v. Norsworthy, Sheriff and Tax Collector, 135 Miss. 845, 100 So. 514, we had under consideration the meaning of Chapter 116, Laws of 1924, and held that although the word ''maximum'' was used by the Legislature in the act, it was nevertheless the

legislative intent to use the word "minimum" and the act was so construed. Numerous other similar authorities are cited in those which we have mentioned, all of which lead to the conclusion that a court is not bound to construe a legislative act literally as written but is free to seek out the legislative intent and to apply that intent even though it may in so doing add something to the act, strike something from it, or substitute something for that contained in the act. We are fully satisfied that by Chapter 287, Laws of 1952, the Legislature intended that the $190,000.00 limitation on the amount to be distributed to any county should be applied annually. Any other conclusion would make the act meaningless, and we are certainly not authorized to declare the provision void, nor do we think that a reasonable interpretation would be to limit each county to $190,-000.00 for all time to come. The construction which we have adopted makes the act sensible and workable.

It is next argued and urged upon us that if we should construe the limitation as being applicable annually that we should go further and construe it as being applicable either for the calendar year beginning January 1, 1952, in accordance with the opinion of the Attorney General to the Motor Vehicle Comptroller, or that we should hold it as being applicable for the fiscal year of each county beginning on October 1, 1951. Either of these interpretations would give the act a retroactive effect. In a long line of decisions, beginning more than a century ago, this Court has consistently held that statutes will be held to have a prospective operation only unless there is clearly manifested an intention to make it effective retrospectively. Stewart v. Davidson, 10 Sm. & M. (18 Miss.) 351; Brown v. Wilcox, 14 Sm. & M. (22 Miss.) 127; Carson v. Carson, 40 Miss. 349; Richards v. City Lumber Co., 101 Miss. 678, 57 So. 977; Power v. Mortgage Co., 112 Miss. 319, 73 So. 51; State Ex Rel. Knox v. Union Tank Car Co., 151 Miss. 797, 119 So. 310; Pan-American Petroleum Co. v. Miller, 154 Miss. 565, 122 So.

393; Bell v. Union & Planters' Bank & Trust Co., 158 Miss. 486, 130 So. 486; Mississippi Central R. R. Co. v. City of Hattiesburg, 163 Miss. 311, 141 So. 897; City of Lumberton v. Schrader, 176 Miss. 272, 168 So. 77; Jefferson Standard Life Insurance Co. v. Dorsey, 178 Miss. 852, 173 So. 669; Hester v. Copiah County, 186 Miss. 716, 191 So. 496; United States Fidelity & Guaranty Co. v. Maryland Casualty Co., 191 Miss. 103, 199 So. 278.

We need not indulge in speculation as to when the legislature intended that Chapter 287 became effective for by its very terms Section 2 thereof specifically states "This act shall take effect and be in force from and after its passage." We hold, therefore, that the act is not retrospective or retroactive, but that all gasoline taxes collected by the Comptroller on and after April 10, 1952, shall be distributed by him in accordance with said Chapter 287 with a limitation that for each year after April 10, 1952, no county shall receive in excess of $190,000.00.

The judgment of the lower court will accordingly be reversed insofar as it holds that the limitation in said Chapter 287 is void and it will be modified to the extent that the writ of mandamus shall issue to compel the Motor Vehicle Comptroller to pay to Hinds County in the distribution to the counties of the gasoline taxes collected by him on and after April 10, 1952, its share in accordance with the formula prescribed by said Chapter 287 until it shall have received therefrom an amount not exceeding the total sum of $190,000.00 within the space of one year after said date.

Reversed in part, and in part affirmed as modified.

*McGehee, C. J.,* and *Kyle, Holmes* and *Lotterhos, JJ.,* concur.