## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-CA-00464-SCT

*LUTZ HOMES, INC. AND BARRY R. LUTZ, INDIVIDUALLY*

*v.*

*CARL WESTON AND LORRAINE WESTON*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/14/2008 |
| TRIAL JUDGE: | HON. ROBERT P. KREBS |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | E. FOLEY RANSON |
| ATTORNEY FOR APPELLEES: | DUSTIN N. THOMAS |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED AND REMANDED - 08/20/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., RANDOLPH AND CHANDLER, JJ.**

**WALLER, CHIEF JUSTICE, FOR THE COURT:**

¶1.     Lutz Homes, Inc., and Barry R. Lutz seek review of the final judgment of the Jackson County Circuit Court releasing their construction lien and barring the counterclaim of Lutz Homes, Inc. Finding that Lutz Homes, Inc., complied with Mississippi Code Section 73-59-9(3) prior to the commencement of this action, we reverse and remand.

### FACTS AND PROCEDURAL HISTORY

¶2.     In April 1999, Barry R. Lutz obtained a residential builder's license from the Mississippi State Board of Contractors in his name. He operated as a sole proprietorship

until October 2001, at which time he incorporated his business as Lutz Homes, Inc., naming himself as president and sole shareholder. Though Lutz thereafter operated in the corporate name, he did not have his license re-issued under the name of Lutz Homes, Inc.[1]

¶3. On June 6, 2005, Carl and Lorraine Weston entered into a contract with Lutz Homes, Inc., for the construction of a home. At the time of contract, and during the course of performance, Lutz Homes, Inc., was unlicensed because the residential builders license remained in Lutz's individual name.

¶4. In the spring of 2006, a dispute caused the Westons to terminate the services of Lutz Homes, Inc., and to refuse payment. The Westons asserted that Lutz Homes, Inc., had not performed in a workmanlike manner, had misrepresented its standards, and had refused to address their concerns. On April 24, 2006, Lutz Homes, Inc., responded by filing a notice of construction lien in the amount of $118,125.

¶5. In August 2006, Lutz contacted the State Board of Contractors and requested that "Lutz Homes, Inc." be named a license holder. Lutz's request was granted on August 11, 2006.[2]

---

[1] Lutz claims that the annual license renewal forms requested information about his corporate structure. He submits that he included information about Lutz Homes, Inc., in these forms; therefore, the State Board of Contractors had notice of the change as early as April 2002.

[2] According to the record, Lutz requested the name change by telephone, and the change was verified by the State Board of Contractors in a memo dated November 2, 2006. This memo is listed as "Exhibit A" to Lutz Homes, Inc.'s, and Lutz's Motion for Declaratory Judgment, but it was not included in the record. In their brief, the Westons do not contest the fact that Lutz Homes, Inc., acquired a residential builder's license in August 2006. They contend, rather, that Lutz did not request merely a change of name, but sought an entirely new license for Lutz Homes, Inc.

¶6.     On October 24, 2006, the Westons filed suit against Lutz Homes and Lutz individually (hereinafter "Defendants"), requesting that the contract be declared null and void, and seeking a preliminary injunction to terminate the construction lien.  The Westons argued that Mississippi Code Section 73-59-9(3)[3] rendered the contract void because Lutz Homes, Inc., was an unlicensed residential builder at the time the contract was entered.  They asserted that a preliminary injunction was proper because Lutz Homes, Inc., being unlicensed, was not authorized to file a construction lien, and that such lien caused them irreparable harm by preventing them from receiving relief grants in the aftermath of Hurricane Katrina.  The Westons sought $300,000 in damages for breach of contract, wrongful interference with a contractual right, and slander of title.  The Defendants filed an answer acknowledging that the residential builder's license had remained in Lutz's individual name until August 2006.  Defendants asserted affirmatively that the delay and cost overruns were the result of Hurricane Katrina, and that the Westons themselves had prevented completion of the contract.  Additionally, Lutz Homes filed a counterclaim for breach of contract, and sought $152,898 in damages for the cost of labor and materials.

¶7.     On December 12, 2007, Defendants filed a motion for declaratory judgment to establish Lutz Homes, Inc.'s right to proceed on the counterclaim and to maintain the construction lien.  They argued that Lutz's residential builder's license should benefit Lutz Homes, Inc., because the company was essentially Lutz's alter ego.  On February 29, 2008,

---

[3] Mississippi Code Section 73-59-9(3) states that "[a] residential builder or remodeler who does not have the license provided by this chapter may not bring any action, either at law or in equity, to enforce any contract for residential building or remodeling or to enforce a sales contract."  Miss. Code Ann. § 73-59-9(3) (Rev. 2008), *extended by* 2009 Miss. Laws ch. 556.

the trial court denied Defendants' Motion for Declaratory Judgment. It further found that Lutz Homes, Inc., was not a licensed residential builder at the time of contract and ordered that its lien be released and its counterclaim barred. On April 15, 2008, the trial court entered a final judgment pursuant to Rule 54(b) of the Mississippi Rules of Civil Procedure dismissing Lutz Homes, Inc.'s counterclaim. Defendants now appeal, raising one assignment of error.

## DISCUSSION

**Whether Mississippi Code Section 73-59-9(3) prohibits Lutz Homes[4] from proceeding on its counterclaim for breach of contract.**

¶8. "Statutory interpretation is a matter of law which this Court reviews de novo." *Wallace v. Town of Raleigh*, 815 So. 2d 1203, 1206 (Miss. 2002) (citing *Donald v. Amoco Prod. Co.*, 735 So. 2d 161, 165 (Miss. 1999)).

¶9. When a statute is unambiguous and coveys a clear and definite meaning, this Court follows its plain terms. *Nat'l Union Fire Ins. Co. v. Miss. Ins. Guar. Ass'n*, 990 So. 2d 174, 180 (Miss. 2008) (quoting *Marx v. Broom*, 632 So. 2d 1315, 1318 (Miss. 1994)). This Court resorts to the canons of statutory interpretation only where a statute is ambiguous or silent on a specific issue. *Nat'l Union Fire Ins. Co.*, 990 So. 2d at 180 (citing *Dupree v. Carroll*, 967 So. 2d 27, 30 (Miss. 2007)).

---

[4] Both parties concede that Lutz Homes, Inc., is the rightful party to the contract. As an aside, we note that, even though the contract is signed solely in Lutz's individual name, the signature line is preceded by the term "Authorized Signature." This implies that Lutz signed as an authorized agent of Lutz Homes. *See Turtle & Hughes, Inc. v. Browne*, 1996 U.S. Dist. LEXIS 9555, *10 (S.D.N.Y. July 9, 1996); *Marveon Sign Co. v. Roennebeck*, 694 P.2d 604, 604 (Utah 1984).

¶10.   Section 73-59-9(3) states that "[a] residential builder or remodeler who does not have the license provided by this chapter may not bring any action, either at law or in equity, to enforce any contract for residential building or remodeling or to enforce a sales contract." Miss. Code Ann. § 73-59-9(3) (Rev. 2008), *extended by* 2009 Miss. Laws ch. 556.  The term "residential builder" encompasses corporations, partnerships, and individuals alike.  Miss. Code Ann. § 73-59-1(b) (Rev. 2008), *extended by* 2009 Miss. Laws ch. 556.  Accordingly, any "corporation, partnership or individual" seeking a residential builder's license must file a written application with the State Board of Contractors.  Miss. Code Ann. § 73-59-5 (Rev. 2008), *extended by* 2009 Miss. Laws ch. 556.  Mississippi's residential builder's licensing statutes thus indicate that a corporation operating as a residential builder should maintain a license distinct from its individual incorporator(s), officer(s), member(s), or shareholder(s). *See* Miss. Code Ann.  §§ 73-59-1 to 73-59-21 (Rev. 2008), *extended by* 2009 Miss. Laws ch. 556.

¶11.   Mississippi Code Sections 73-59-1 through 73-59-21 charge the State Board of Contractors with enforcement and supervisory authority for licensing residential builders and remodelers.  Miss. Code Ann. §§ 73-59-1 to 73-59-21 (Rev. 2008), *extended by* 2009 Miss. Laws ch. 556.  Pursuant thereto, the State Board of Contractors has promulgated rules and regulations concerning changes in a licensee's name or corporate structure.  Board of Contractors Regulations, 50-023 CMSR § 002-1 (1994).  The rules state that, when corporate structure is altered, the currently licensed person or entity must complete an application outlining the change of structure, articulating the impact of the change, paying a fifty-dollar fee. *Id.* Specifically, the pertinent rule provides that:

5

Any corporation or other legal business entity holding a valid license shall immediately notify the [State Board of Contractors] of any change of name or corporate structure by filing an application with the Executive Secretary of the Board outlining the specific change and the impact on the status of the entity. A fee of $50.00 shall accompany each application filed pursuant to this rule.

*Id.*

¶12. As early as 2002, Lutz noted the change in business structure by filing his annual license renewal forms. In his April 2002 license renewal form, Lutz reported that he had incorporated his business in October 2001. Thereafter, Lutz provided information about his new business structure on each annual license renewal form until 2006, when the form was modified so that such information was no longer required. While Lutz may be credited for diligently and accurately filing his annual license renewal forms, he did not comply with the rules set forth by the State Board of Contractors in submitting the required application for a change in corporate structure. Lutz failed to submit the requisite application or fifty-dollar fee.

¶13. No issue exists on appeal concerning whether Lutz Homes, Inc., was licensed prior to August 2006. Lutz acknowledges that "technically speaking, at the time of execution of the construction contract (June 6, 2005) Lutz Homes Inc. [sic] did not have a residential builders license."

¶14. We agree that Lutz Homes, Inc., was unlicensed at the time it entered into the construction contract with the Westons. Nevertheless, Section 73-59-9(3) does not bar its counterclaim or lien. Miss. Code Ann. § 73-59-9(3) (Rev. 2008), *extended by* 2009 Miss. Laws ch. 556.

6

¶15. As previously discussed, under Section 73-59-9(3), a corporation must be licensed prior to asserting an "action."[5] Miss. Code Ann. § 73-59-9(3) (Rev. 2008), *extended by* 2009 Miss. Laws ch. 556. The plain language of Section 73-59-9(3) requires only that a residential builder obtain a license prior to bringing an action. *Id.* Unlike similar statutes found in Title 73 of the Mississippi Code, Section 73-59-9(3) does not require that a residential builder be licensed at the time of performance or at the time the cause of action accrued. *Cf.* Miss. Code Ann. § 73-34-55 (Rev. 2008) (in order to maintain an action to recover a commission, fee, or compensation, a real estate appraiser must have been licensed at the time of doing the act or rendering the service); Miss. Code Ann. § 73-35-33(1) (Rev. 2008) (in order to maintain an action to recover a commission, fee, or compensation, a real estate broker must have been licensed at the time of the act or service). Once a license has been obtained, the disqualification is removed and an action may be brought to enforce a residential building or sales contract, regardless of whether the contract was made before or after the license was acquired.[6] *See* Miss. Code Ann. § 73-59-9(3) (Rev. 2008), *extended by* 2009 Miss. Laws ch. 556.

---

[5] An "action" is defined at common law as "a legal demand of one's right." *United States v. Smelser*, 87 F.2d 799, 800 (5th Cir. 1937); *cf.* Black's Law Dictionary 24 (abridged 7th ed. 2000) (defining "action" as "[a] civil or criminal judicial proceeding").

[6] In an unpublished opinion issued August 17, 2004, the United States Court of Appeals for the Fifth Circuit found that Section 73-59-9 required a license at the time the cause of action accrued. *Libbey v. Ridges*, 113 Fed. Appx. 3 (5th Cir. 2004) (unpublished). This unpublished opinion, however, is not considered precedent under Fifth Circuit Rules. 5th Cir. R. 47.5.4. Moreover, while Fifth Circuit decisions are highly persuasive, they are not binding authority for this Court. *Sperry-New Holland, Div. of Sperry Corp. v. Prestage,* 617 So. 2d 248, 256 (Miss. 1993) (superseded on other grounds by statute).

¶16. Lutz Homes, Inc., became licensed in August 2006, two months prior to the start of this litigation, and four months before its counterclaim was filed. Its counterclaim and lien, therefore, are not barred under Section 73-59-9(3).

## CONCLUSION

¶17. We find that the trial court erred in dismissing Lutz Homes, Inc.'s counterclaim and ordering its construction lien released. Accordingly, we reverse the trial court's judgment and remand this case for further proceedings.

¶18. **REVERSED AND REMANDED.**

    **CARLSON, P.J., RANDOLPH, LAMAR AND PIERCE, JJ., CONCUR. KITCHENS, J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, P.J., AND CHANDLER, J.; DICKINSON, J., JOINS IN PART. DICKINSON, J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION.**

    **KITCHENS, JUSTICE, CONCURRING IN RESULT ONLY:**

¶19. I agree that Lutz Homes may bring a counterclaim, but not for the reasons stated by the majority. In my opinion, there is no need to engage in the business of statutory interpretation, because Lutz Homes, Inc., was a licensed builder prior to entering into the contract.

¶20. Lutz originally obtained his residential builder's license while operating his business as a sole proprietorship. As required, each year he filed a renewal application with the State Board of Contractors, and his license was consistently renewed annually. For several years, he indicated on the renewal form that he was doing business as an individual, but once he began operating his business as a corporation, Lutz correctly reported the change. In his

8

2002 application, he noted that ownership of the business was different, that he was now operating as a corporation, that he was the president of the corporation, and he also listed the corporation's federal tax identification number. Lutz filled out the form completely and accurately. He did not include the name of the new corporation, but the form did not ask for that information. It did have a blank for the "name in which license *is* issued" (emphasis added), and Lutz correctly answered, "Barry R. Lutz."

¶21.   From the record before us, it appears that Lutz did everything he was required to do to ensure that his corporation was lawfully operating with a residential builder's license. The information filed with the State Board of Contractors clearly indicated that the license renewal was for a corporation, and this first occurred some three years before Lutz and the Westons contracted with each other.

¶22.   The majority finds, however, that Lutz Homes, Inc., was not a licensed builder because Lutz did not file a separate application to change the name on his license. The majority relies on language from the Board of Contractors Regulations, regulations not cited by either party, and which, according to the record, are not strictly enforced. In 2006, according to Lutz, he was able to make the technical name change to his license with a simple telephone call. There is no indication that the State Board of Contractors required him to file a separate application or pay a $50 fee. Moreover, Lutz maintains that he was not aware "that he could have requested that [the license] be transferred from Barry R. Lutz to Lutz Homes, Inc. or even that this action was desirable and/or necessary as a condition to any future attempt to enforce a contract."

9

¶23. Finding that Lutz Homes, Inc., was unlicensed at the time the contract was entered into and performed, the majority opinion goes on to reason that the corporation may still pursue a counterclaim through an interpretation of the statute that, with respect, I find highly problematic and strained. The majority holds that a residential builder may file a civil action seeking to collect payment for work done without a license, as long as that builder obtains a license prior to filing suit. Reading Mississippi Code Section 73-59-9 (3) in the context of the entire statutory scheme, I believe this interpretation to be erroneous.

¶24. The pertinent language provides, "[a] residential builder or remodeler who does not have the license provided by this chapter may not bring any action, either at law or in equity, to enforce any contract for residential building or remodeling or to enforce a sales contract." Miss. Code Ann. § 73-59-9(3) (Rev. 2008), *extended by* 2009 Miss. Laws ch. 556. The immediately preceding subsections make it a misdemeanor, punishable by a fine of up to $5,000 and/or imprisonment of thirty to sixty days, to build or remodel a residence without a license. Miss. Code Ann. § 73-59-9(1)-(2), *extended by* 2009 Miss. Laws ch. 556.

¶25. This strong prohibition against residential construction work by unlicensed corporations, partnerships, or individuals, which clearly is penal in nature, is simply reinforced by the additional penalty of prohibiting unlicensed builders or remodelers from using the state's courts to try to collect unpaid bills for residential construction work performed without benefit of the required license. Such an interpretation is consistent with the majority's conclusion that the intent of the statute is "to protect [consumers] against the dangers associated with unlicensed builders." Yet, following the majority's reasoning, an unlicensed builder could utilize Mississippi's courts to enforce a contract for work illegally

performed if only the builder obtained a license in advance of filing suit. Surely the Legislature could not have intended such a patently perverse course of events.

¶26. Indeed, traditional rules of statutory construction militate against this Court's reaching the conclusion that it does today via the path traveled by the majority. "Unthought of results must be avoided if possible, especially if injustice follows, and unwise purpose will not be imputed to the Legislature when a reasonable construction is possible." *Evans v. Boyle Flying Service, Inc.*, 680 So. 2d 821, 825 (Miss. 1996) (quoting *McCullen v. State*, 217 Miss. 256, 63 So. 2d 856, 861 (1953)). Moreover, "[w]hen no valid reason exists for one of two possible constructions of a statute, the interpretation with no valid reason ought not be adopted." *Allred v. Webb*, 641 So. 2d 1218, 1222 (Miss. 1994) (citing *Thornhill v. Ford*, 213 Miss. 49, 56 So. 2d 23, 30 (1952)). I see no valid reason why the Legislature would allow a builder to sue for work performed without a license, so long as the builder obtains a license prior to filing suit. The prohibition against bringing suit should apply to those builders and remodelers who were unlicensed at the time the work in question was performed.

¶27. Having said that, I nevertheless would hold that this builder was not and is not prohibited by the statute from maintaining a civil action, in this case by means of its counterclaim, in an effort to collect what it claims it is owed by the Westons, inasmuch as Lutz, either individually or corporately, was continuously licensed at all relevant times. Barry R. Lutz had done everything the State Board of Contractors' form asked of him to transfer the license he had acquired and maintained as an individual to the corporate entity he had organized to continue his residential construction and remodeling business without

11

interruption. In short, this building contractor is not prohibited from utilizing Mississippi's court system in pursuit of its claim against Mr. and Mrs. Weston for the simple and obvious reason that the contractor was properly licensed at all relevant times.

¶28. For these reasons, I respectfully concur in result only.

**GRAVES, P.J. AND CHANDLER, J., JOIN THIS OPINION. DICKINSON, J. JOINS THIS OPINION IN PART.**

**DICKINSON, JUSTICE, CONCURRING IN PART AND IN RESULT:**

¶29. Although I agree with the majority's conclusion that Lutz Homes, Inc. may pursue its cause of action against the Westons, I do not agree with its reasoning. Rather, I agree with Justice Kitchens's reading of the documents, which clearly demonstrates that Lutz Homes, Inc. was a licensed contractor when the work for the Westons was performed.

¶30. However, my agreement with Justice Kitchens is not complete. I find myself in the unfortunate position of parting ways with my esteemed colleague from Copiah County only as to his view that the clear, unambiguous language of Section 73-59-9(3) of the Mississippi Code would not have allowed the corporation to become licensed after performing the work, and then to file suit. I believe it would.

¶31. Furthermore, I cannot agree that our personal view of what is "perverse" should control our interpretation of a statute. In my opinion, even where enforcing a statute's clear language might yield a "perverse" result (as Justice Kitchens reasonably fears would happen in this case), it is not within our constitutional prerogative to refuse to apply the statute's plain language. Rather, the prospect that a perverse result might flow from the application of a constitutional statute is a legitimate and serious legislative concern.

12