BOARD OF SUPERVISORS OF LAFAYETTE COUNTY *v.* PARKS, et al.

March 22, 1954

No. 39047 58 Adv. S. 6 71 So. 2d 197

*Smallwood, Sumners & Hickman,* Oxford, for appellant.

*Hugh N. Clayton,* New Albany, for appellees.

**KYLE, J.**

This case is before us on appeal by the Board of Supervisors of Lafayette County from a judgment rendered by the circuit court against the county and in favor of Franklin Parks and eleven others for the aggregate sum of $4,173.43, alleged to be due and owing by the county to the appellees for materials furnished and labor performed in the construction and maintenance of the public roads of Supervisor's District No. 2 during the month of December, 1951, which was the last month of the term of office of the outgoing members of the board of supervisors.

The original claims were filed with the board of supervisors at its January, 1952, meeting and were disallowed by the board. The claims were refiled several months later, and were again disallowed by the board for the reason that the claims represented obligations incurred in excess of one-fourth of the budget item for road construction and maintenance for Supervisor's District No. 2 during the fiscal year 1951-1952.

Section 15 of the County Budget Law, Chapter 247, General Laws of the State of Mississippi 1950, is as follows:

"Section 15. Expenditures for last year of term limited.—No board of supervisors of any county shall expend from, or contract an obligation against the budget estimates for road and bridge construction, maintenance and equipment made and published by it during the last year of the term of office of such board, between the

first day of October and the first day of the following January, a sum exceeding one-fourth (¼) of such item of the budget made and published by it, except in cases of emergency provided for above; and the clerk of any county is hereby prohibited from issuing any warrant contrary to the provisions of this section. Provided no board of supervisors nor any member thereof shall buy any machinery or equipment in the last six (6) months of their or his term unless or until he has been renominated at the primaries of that year.''

It was admitted that the county budget for the fiscal year 1951-1952 which was approved and adopted by the board of supervisors at its September 1951 meeting, showed separate budget items for road maintenance and construction for each of the five supervisors' districts, and that the claims sued on represented obligations incurred for road maintenance and construction in Supervisor's District No. 2 during the month of December 1951 in excess of one-fourth of the amount of the budget item for said Supervisor's District for the fiscal year.

The circuit judge, in his opinion, which was made a part of the record, held that, since the county had received the benefit of the materials and labor furnished, it would be unjust for the court to hold that the claims could not be paid. Judgment was therefore rendered against the county for the several amounts alleged to be due, and the board of supervisors was ordered to allow the claims, and the clerk was directed to issue warrants in payment thereof.

The question presented for our decision on this appeal is whether the claims can be lawfully paid in view of the provisions of the above mentioned Section 15 of the County Budget Law. We think that question must be answered in the negative.

 The board of supervisors had a right under the statute to adopt separate budget items for road maintenance in each of the supervisors' districts, and to fix the

amount that might be lawfully expended for the construction and maintenance of the public roads in each district during the fiscal year. When that was done, according to the plain provisions of the statute, neither the board, nor a member of the board, had a right to expend or contract obligations during the months of October, November and December of the last year of their term of office, in excess of one-fourth of any such item, except in cases of emergency as provided for in the statute; and it is not claimed that the obligations sued on were incurred under the emergency provisions of the statute.

It may be argued that the County Budget Law makes no provision for the budgeting of road funds in separate amounts for each of the five supervisors' districts, and that expenditures may be made during the last three months of the term of office of an outgoing member of the board in excess of one-fourth of the amount budgeted for his district, provided the total amount of such expenditures for the five districts does not exceed one-fourth of the total amount budgeted for road purposes in the county for the fiscal year. But the provisions of Section 15 are plain and unambiguous. The words used in the statute are "one-fourth of such *item* of the budget," which in this case means the item of expenditures for road maintenance in Supervisor's District No. 2. An interpretation of Section 15 as suggested above would defeat the purpose which the legislature had in mind when Section 15 was enacted as a part of the statute.

 The primary aim of the County Budget Law is to prohibit deficit spending. The provisions of the law are mandatory; and the law applies to expenditures made by the board of supervisors for road purposes, whether such expenditures are made by the board under a county unit plan or under a supervisor's district unit plan. The law does not require the board of supervisors to budget its road expenditures on a county unit basis, or a super-

visor's district unit basis. But, whatever plan may be adopted, the law does require that the board fix the amount to be expended under each budget heading during the fiscal year; and after that amount has been fixed it cannot be exceeded, except in cases of emergency, as provided for in the statute.

We are not concerned here with the relative merits of the county unit plan or the supervisor's district unit plan for working and maintaining the public roads. The question that we are concerned with here is, whether an outgoing board of supervisors, which has adopted the supervisor's district unit plan for working and maintaining the public roads and has set up separate budget items for road maintenance in each of the five supervisors' districts for the fiscal year beginning a few weeks after the August primaries, can, despite the provisions of the County Budget Law, expend from any one of those budget items, during the last three months of the terms of office of the board members, a sum exceeding one-fourth ($\frac{1}{4}$) of such budget item. We think that Section 15 was clearly intended to prohibit such expenditures.

Boards of supervisors have the right under the statutes now in force to work and maintain the public roads of the county under a county unit plan, or to work and maintain the public roads in each of the five supervisors' districts as separate road units and taxing districts.

Sections 8357 and 9880, Code of 1942, authorize the board of supervisors of any county to raise funds for working and maintaining the public roads of the county, or any supervisor's district or districts, by an ad valorem tax on all the taxable property in the county, or supervisor's district or districts.

Section 8346, Code of 1942, authorizes the board of supervisors of any county, in its discretion, to employ a road commissioner to superintend the working, construction and maintaining of the public roads of the

county, or supervisor's district, if the board considers it necessary that such commissioner be employed.

Chapter 241, General Laws of Mississippi, 1950, authorizes the board of supervisors to issue the bonds of a supervisor's district to raise money for the purpose of constructing and maintaining roads and bridges in such district; and Chapter 246, General Laws of Mississippi 1950, authorizes the board of supervisors to purchase tractors, trucks and other road machinery and equipment on the installment plan, and to issue the purchase money notes of the county or a separate road district or a supervisor's district for the unpaid balance of the purchase price.

From the numerous statutes cited above, it is clear that the Board of Supervisors of Lafayette County had a right to maintain the public roads of the several supervisors' districts of the county as separate road units and taxing districts, and to set up separate budget items for road maintenance in each of the five supervisors' districts of the county for the fiscal year 1951-1952; and from the stipulation filed as a part of the record in this cause it appears that the board of supervisors did set up such separate budget items for each of the five districts. The stipulation in fact shows that no budget item for county-wide road expenditures was set up for that fiscal year.

After the county budget had been adopted by the board at its September 1951 meeting, the amount of funds that could be lawfully expended for road construction and maintenance in Supervisor's District No. 2 could not exceed the amount of funds budgeted for that purpose; and under the provisions of Section 15 of the County Budget Law, only one-fourth ($\frac{1}{4}$) of that amount could be lawfully expended or obligated for expenditure during the months of October, November and December, 1951.

As stated above, the County Budget Law was designed to regulate and control not only expenditures made by the board of supervisors for county-wide purposes, but also all other expenditures made by the board of supervisors as the fiscal agents of the county.

Section 4 of the Act provides that the board of supervisors shall at its September meeting prepare *"a complete budget of revenues and expenses estimated for the next fiscal year,* which shall be based on the aggregate funds estimated to be available for the ensuing fiscal year *for each fund,* from which such estimated expenses shall be paid, *exclusive of school maintenance funds,* which shall be shown separately."

Section 5 of the Act requires that the "budget of expenses shall show *in detail* all estimates of the expenditures to be made out of the general county fund *and its auxiliary funds,* all estimates of expenditures to be made out of *the road and bridge maintenance and construction funds,* and all amounts to be paid out of the several bond and interest sinking funds for the bonded debt service in the next fiscal year." The road and bridge maintenance and construction funds referred to and the bond and interest sinking funds referred to may be county-wide funds or district funds; but they are all expended by the board of supervisors.

Section 6 of the Act requires that the clerk of the board of supervisors shall keep a regular set of books or system of accounts *"under headings, corresponding with the several headings of the budget, so that the expenditures under each head may at once be known."* And it is made the duty of the clerk "to enter all receipts and expenditures in the said books or system of accounts monthly, post and balance the ledgers thereof at the end of each month so that all information needed for a comprehensive review of operations of the county under budgetary limitations may be readily obtainable."

Section 7 of the Act requires that the clerk docket all claims against the county consecutively *under the heading of. each fund out of which same shall be paid.*

Section 8 of the Act provides that ''the amount appropriated and authorized to be expended for any *item* contained in such budget must not exceed the amount actually estimated for such *item* * * *.''

Section 9 of the Act provides that, ''The. budget as finally determined, in addition to setting out separately each general item of expenditure for which appropriations are to be made and the sum out of which the same is to be paid, shall set out the total amount to be expended from *each fund* * * *.''

Section 10 of the Act provides that no expenditures shall be made, or liabilities incurred, or warrants issued, in excess of the budget estimates as finally determined by the board of supervisors; and the board of supervisors shall not approve any claim, and the clerk shall not issue any warrant, for any expenditures in excess of the budget estimates thus made and approved by the board of supervisors, ''except upon the order of a court of competent jurisdiction, or for an emergency as hereinafter provided.''

The provisions of the budget law, as stated above, are mandatory. From the agreed statement of facts it seems clear that the obligations sued on were incurred in violation of Section 15 of the 1950 statute, and that the board of supervisors was not authorized to pay the claims.

In construing statutes of this kind, it is the duty of the Court to seek to ascertain the legislative intent and give effect to that intent. Kennington v. Hemingway, 101 Miss. 259, 57 So. 809; City of Holly Springs v. Marshall County, 104 Miss. 752, 61 So. 703; Prather v. Googe, 108 Miss. 670, 67 So. 156; White, State Auditor v. Miller, State Tax Collector, 162 Miss. 296, 139 So. 611; McCullen v. State ex rel. Alexander, 217 Miss. 256, 63 So. 2d 856.

The appellees' attorney cites, in support of his contention that the claims should be paid, the case of Carroll County v. Shook, 216 Miss. 232, 62 So. 2d 311. But the opinion in that case shows that the county was held liable for the payment of the claims sued on in that case for the reason that the county failed to show that at the time the obligations were incurred the county had exceeded its budget. In the case that we have here, it is admitted that the obligations sued on were incurred during the month of December 1951, and that the obligations were in excess of one-fourth of the amount of the budget item for Supervisor's District No. 2 for the fiscal year.

Section 15 of the County Budget Law was enacted to prevent the depletion of the road funds by outgoing members of the board of supervisors during the last few months of their terms of office. This Court has held in many cases that persons dealing with the board of supervisors of the county must see that their contracts are legal. Jackson Equipment & Service Co. v. Dunlop, 172 Miss. 752, 160 So. 734; Martin v. Newell, 198 Miss. 809, 23 So. 2d 796. Section 2924, Code of 1942, expressly provides that contracts made by the board of supervisors or members of the board, in violation of any of the provisions of law are void.

For the reasons stated above, the judgment of the lower court is reversed, and judgment will be entered here in favor of the appellant.

Reversed and judgment rendered for the appellant.

*Hall, Lee, Arrington* and *Gillespie, JJ.,* concur.

---

ROBERDS, J., dissenting.

It is admitted the materials were furnished and the work done under contract with the board of supervisors. It is also stipulated that the claims are just and correct and the county got the full benefit thereof.

Sections 10 and 15 of said Chapter 247 are involved. I will deal with them in the order stated.

The pertinent part of Section 10 is as follows: "No expenditures shall be made, or liabilities incurred, or warrants issued, in excess of the budget estimates as finally determined by the board of supervisors, or as thereafter revised under the provisions of this Act. The board of supervisors shall not approve any claim, and the clerk shall not issue any warrant for any expenditures in excess of the budget estimates thus made and approved by the board of supervisors, or as thereafter revised under the provisions of this act * * *," with certain exceptions not applicable here. Would the allowance of these claims violate Section 10 under the admitted facts of this case? The stipulated facts are that the aggregate of these claims exceeds by one hundred per cent one-fourth of the road and bridge fund allotted by the supervisors of Beat 2 for the fiscal year beginning October 1, 1951, and ending September 30, 1952. But it is also stipulated the amount of the claims does not exceed one-fourth of the road and bridge fund of the county for the fiscal year 1951-1952. The total budget of revenues and expenses estimated for said fiscal year is not shown. We do not know what that was. But it is stipulated that the money on hand for roads and bridges in January, 1952, when these claims were disallowed, standing to the credit of the five beats, was as follows: "Beat One $6,583.48; Beat Two $7,816.04; Beat Three $7,409.61; Beat Four $5,605.10; Beat Five $14,636.16—a total of $42,060.39." It is not shown that any obligation had been incurred or contracted against the stated amounts other than the claims in controversy. Having admitted that the claims in controversy were just and correct, and that the only reason for not paying them was lack of authority, for the reasons stated, the burden was upon the county to show the supervisors did not possess such authority. Carroll County v. Shook, 216 Miss. 232, 62

So. 2d 311. It is evident, I think, without further discussion, that the foregoing proof does not show that payment of these claims would violate Section 10. It is not shown that these claims exceed the budget estimates for roads and bridges of Lafayette County for the fiscal year 1951-52. In fact, we do not know what the road and bridge fund budget of the county was, and, as stated, it is expressly agreed the claims did not exceed one-fourth of such budget whatever it was. The consideration now given to the effect of Section 15 will also have some bearing upon the effect of Section 10.

I quote the pertinent part of Section 15: "No board of supervisors of any county shall expend from, or contract an obligation against, the budget estimates for road and bridge construction, maintenance and equipment made and published by it during the last year of the term of office of such board, between the first day of October and the first day of the following January, a sum exceeding one-fourth ($\frac{1}{4}$) of such item of the budget made and published by it $*$ $*$ $*$ except in cases of emergency provided for above; and the clerk of any county is hereby prohibited from issuing any warrant contrary to the provisions of this section .$*$ $*$ $*$." It will be noted the stipulation of the parties says the aggregate of these claims exceeds one-fourth of the credit to Beat Two, but such aggregate does not exceed the road and bridge fund budget for the county. Is the beat budget or county budget the test?

Section 1 says the Act shall be cited as the "County Budget Law."

Section 2 defines the word "clerk," when used in the Act, as the "chancery clerk acting in his official capacity as the clerk of the board of supervisors and as the county auditor."

Section 3 provides that "Each County" shall operate on a fiscal year basis.

Section 4 requires "The board of supervisors of each county of the State of Mississippi" to prepare, at its September meeting each year, "a complete budget of revenues and expenses estimated for the next fiscal year, which shall be based on the aggregate funds estimated to be available for the ensuing fiscal year for each fund, from which such estimated expenses will be paid, exclusive of school maintenance funds, which shall be shown separately * * *."

Section 5 requires the budget to be made up on forms prepared by the State Auditor.

Section 6 requires the clerk of the board of supervisors "of each county" to keep the books of the county, entering all receipts and expenditures for the county thereon, the accounts to correspond to "the several headings of the budget."

Section 7 requires all "claims against the county" be presented to the clerk, who shall issue warrants on the respective funds as allowed and ordered by the board of supervisors.

Section 9 deals with final budget of the county and Section 10 prohibits payment of claims in excess of such budget.

Section 14 specifies the conditions under which the board of supervisors shall revise the "County budget."

Section 15 provides "No board of supervisors of any county" shall exceed the county budget.

It will be seen that every reference in the budget law is to the county and the *board* of supervisors. Neither the word "beat" nor "district" appears in the entire budget act. Every reference to the unit is to the county. The practice of apportioning the road and bridge fund between the five districts of the county is a private arrangement between the supervisors. The budget law, with which we are now dealing, makes no provision for such apportionment. Even though the money be apportioned it belongs to the county, although the warrant of

the clerk, acting for the county, may designate from which fund the warrant is payable. Indeed, the budget itself is necessarily divided into and set out under various headings—such as general fund, road and bridge fund, bond and interest sinking fund—and the general fund for each heading being composed of different items listed under sub-heads. For instance, one natural sub-head under the road and bridge fund would be the cost of maintenance, and this sub-head is composed of a number of items, such as salaries and wages, cost of repair and construction materials, machinery repair and upkeep, etc., but the different items simply constitute a part of, and in the aggregate make up, the whole of the road and bridge fund. That is provided for in Section 4 of the Act. It requires the board of supervisors to prepare, at its September meeting each year, "a complete budget of revenues and expenses estimated for the fiscal year," which shall be based upon the aggregate of each item composing such fund. The County is the unit —not the various beats thereof.

The main idea invoked in support of the correctness of the majority opinion is the assumption that the word "item" in Section 15 has reference to the separate amounts which the supervisors may divide out among themselves. It is difficult to see the force of the contention when neither the word "district" nor "beat" is used in the entire budget law. The section refers to the item as "such item." The only prior item to which Section 15 had made reference was the road and bridge construction, maintenance and equipment total estimate.

The unwisdom of applying the prohibition against the amount allotted to each district is readily seen by conceiving a situation, as has often happened, where a majority of the supervisors limits the allotment unduly and unjustly to one or more of the supervisor's districts. In such case innocent people who contribute their materials and labor to the county are defeated of their just and

equitable claims even though the county road and bridge fund may have yet remaining and unneeded more than sufficient money with which to pay the claim. Indeed, that appears to be true in this case. It is not contended these claims exceed one-fourth of the county road and bridge fund budget. When the claims were rejected the county had in that fund the sum of $42,060.39, and that, too, at a time when people were just beginning to pay taxes. The claims are less than one-fourth that amount. What the total amount of such fund might finally be after payment of all taxes is not shown, nor is it shown what the estimated road and bridge budget, as set up by the supervisors, was. Therefore, we are deciding against these claimants simply because their combined claims exceed one-fourth of the amount of money allotted to Supervisor's District No. 2, when the county had ample money on hand with which to pay them. These were county roads regardless where located. They had to be located in some part of the county.

The fact that the supervisors had power to levy taxes throughout the county, or in a supervisor's district with which to pay bonds of the district, has no bearing upon the manner of preparing the budget so far as I can see. Possession of that power might have some relevancy in determining the amount of the budget but it has no bearing upon the manner of making up the budget.

It is well to remember also that it is admitted the contract with these claimants, according to the record admissions, were made with the board of supervisors—not just the supervisor from Beat 2. Indeed, it is not perceived by what authority the supervisor from Beat 2 alone could have made a lawful contract of that character, yet the only defense to the claims is that they exceeded the budget—not that they were not legal contracts otherwise.

Justice and right should be taken into consideration. It is conceded these claimants furnished the materials

and did the work and that the charges are reasonable and proper and the county got the full benefit thereof. That being true they should be paid as a matter of fairness and justice if that can be done legally. The entire defense of the supervisors here is that they exceeded their authority and the claimants are charged with notice thereof. That is a good defense if it be true the acts are illegal. However, as to third persons, we should construe the law strictly. In the very nature of the case it is difficult, if not in many instances impossible, for an outside person, dealing with a county, to know whether the governing authority has exceeded its powers. Even this Court, after disclosure of all of the facts, is almost equally divided upon that question.

*McGehee, C. J.,* and *Holmes* and *Ethridge, JJ.,* join in this dissent.