GOLDING, STATE AUDITOR OF PUBLIC ACCOUNTS *v.* LATIMER, et al.

No. 41320 June 13, 1960 121 So. 2d 615

*Matthew Harper, Jr.,* Asst. Atty. Gen., Jackson, for appellant.

166

*Snow, Covington & Shows,* Meridian; *Stribling & Jones, Sanford & Alford, Clayton Lewis,* Philadelphia, for appellees.

KYLE, J.

The State Auditor of Public Accounts brought suit in the Chancery Court of Neshoba County, under authority of Section 3877-05, Mississippi Code of 1942, Recompiled (Ch. 202, Laws of 1948, as amended by Ch. 176, Laws of 1952), against I. M. Latimer, former county superintendent of education and members of the county board of education of Neshoba County, and sureties on their official bonds, seeking to recover large sums of money belonging to the Neshoba County school funds alleged to have been misappropriated, or otherwise illegally expended by the said county superintendent of education and said county board of education during the period from January 1952 through December 1955, during which period the named defendants were in office.

The complainant alleged that, during the period from January 1952 through December 1955, the said I. M. Latimer, county superintendent of education, issued warrants for materials and services for which the Neshoba County schools received neither materials nor services in the sum of $9,827.91; that such expenditures were made without authority of the law and constituted the

appropriation of public funds to objects not authorized by law. An itemized list of the warrants evidencing said expenditures was attached to the complainant's bill as an exhibit thereto marked Exhibit "G". The complainant charged that in each of the cases itemized in said schedule the county received neither materials nor services, and that as a result of such unlawful expenditures the defendant county superintendent of education and the surety on his official bond, and the named defendants who were members of the county board of education and the surety on their bonds became liable for the repayment of said sums to the county.

The complainant further alleged that during the same period of time the said I. M. Latimer, county superintendent of education, received certain sums of money, aggregating the total sum of $401.25, which represented the proceeds of sale of materials belonging to the county school system and rentals for the use of the county school buses, which were never accounted for or paid into the county school funds, and the complainant attached to his bill of complaint, as Exhibit "H" thereto, an itemized list of the checks issued for the purchase price of said materials or the use of such county school buses, showing the dates of said checks and the amounts and the endorsements thereon. The complainant charged that the Neshoba County schools received none of said moneys, and that the appropriation of said moneys by the said defendant, I. M. Latimer, was illegal and without authority of law, and as a result of the appropriation of said funds by the said defendant, the said defendant and the surety on his bond and the members of the county school board and the surety on their bonds became liable, for the unlawful appropriation of said funds.

The complainant further alleged that from October 1, 1954, through December 1955, the said defendant I. M. Latimer, as county superintendent of education, purchased certain supplies and materials for the use of the

school buses of said county in the amount of $320.47 from George Posey, a member of the county board of education, and one of the defendants named in the bill of complaint, and issued warrants to the said George Posey for the purchase price of said materials and supplies; that all of said purchases were in direct violation of Section 109 of the Constitution of the State of Mississippi, and in violation of Section 9, Chapter 17, Laws of Extraordinary Session of the Legislature, 1953; and that the said defendant I. M. Latimer and the surety on his bond, together with the defendant George E. Posey and the surety on his bond, were liable for the repayment to the county school fund of the full amount of said warrants, as shown on itemized list of said warrants attached to the bill of complaint and marked Exhibit "I".

The complainant further alleged that the said I. M. Latimer, as county superintendent, made certain payments to teachers from the Minimum Program Teachers' Salary Fund in excess of the limitations provided for by subparagraph (1) sub-section (a) of Section 2 of Chapter 14, Laws of 1953 Extraordinary Session, which excess payments totaled $1,874.61, as shown on itemized statements of said excessive payments attached to the complainant's bill as Exhibit "J"; and that, as a result of said unlawful expenditures of the county school funds, the said I. M. Latimer and the surety on his bond, and the other named defendants as members of the county board of education and the surety on their bonds, became liable for the repayment of same to the county school fund, and the complainant was entitled to recover of said defendants the said sum of $1,874.61.

The complainant further alleged that on January 30, 1955, the defendant I. M. Latimer issued Warrant No. 4250 to Barefield & Company in the amount of $1146 on "other current cost" funds account, which warrant falsely indicated that such expenditure was for classroom supplies, but was actually issued for the purchase

of new office furniture, which was contrary to and in violation of Section 4 of Chapter 16, Laws of 1953, Extraordinary Session, and contrary to the provisions of Section 8(b) of Chapter 14, Laws of 1953, Extraordinary Session; that said expenditure represented an illegal expenditure of Neshoba County school funds; and that the said I. M. Latimer and the surety on his bond and the other named defendants as members of the county school board and the surety on their bonds became liable for said unlawful expenditure.

The complainants further alleged that for the fiscal year ending June 30, 1956, the said I. M. Latimer as county superintendent of education, and the members of the county board of education, expended funds and incurred obligations in excess of funds available for the fiscal year ending June 30, 1956, in the total amount of $35,861.96, an itemized statement of which expenditures and obligations incurred in excess of the funds available for such period being attached to the bill of complaint as Exhibit "L"; and that the said I. M. Latimer, county superintendent of education, and the other named defendants as members of the county board of education, and the surety on their bonds, became liable for said sum of $35,861.96; that the complainant had made written demand upon the defendant I. M. Latimer, former county superintendent of education, and upon the named members of the county board of education and the surety on their bonds, for repayment of the above mentioned illegal and unlawful expenditures, plus accrued interest; that said defendants had wholly failed and refused to pay the same or any part thereof. The complainants asked for judgment against the defendants for the above stated amounts together with interest and costs.

The defendant I. M. Latimer and the defendants who were sued as members of the county board of education filed their separate answers. The defendant Latimer in his answer admitted that he had issued warrants

for the items set forth in Exhibit "G" to the bill of complaint except a warrant for $423.30 payable to Arkansas Fuel Oil Company, but denied that the warrants represented expenditures made without authority of law. The defendant Latimer admitted that he had received the items listed in Exhibit "H," with the exception of three items aggregating the sum of $170, and had used the funds received as petty cash in the superintendent's office. He denied that there was any misappropriation of said funds. He admitted that he had made the purchases listed in Exhibit "I" from G. E. Posey, who was a member of the county board of education, who operated a store in a remote section of the county where he sold gasoline and oil and incidental supplies for the school buses. He admitted that he had made the payments for teachers' salaries shown in Exhibit "J", with the exception of the warrant to Mrs. Verna Pippin of $235.74, which was voided and never used. He stated in his answer that the sums which were paid to the teachers were earned by the teachers and were lawfully due them. He admitted that he had issued a warrant for the $1146 item referred to in the bill of complaint, which was drawn on "other current costs" funds account, and that said expenditure was made for office furniture, but he denied that that purchase was a direct violation of any law. He averred in his answer that the payment was made in good faith and that the county received full value for the amount paid under the warrant. He denied that during that part of the fiscal year ending June 30, 1956, when he was in office, expenditures were made or obligations incurred in excess of the funds available within the contemplation and meaning of the statute referred to or that he was liable in any manner for such expenditures.

After answering the allegations of the bill of complaint, the defendant alleged and pleaded as special matters of defense, that in every act complained of he had acted in good faith and with honest purpose; that

if the making of any of the expenditures complained of was wrongful or without lawful right such expenditure represented an honest mistake; that all matters upon which action was taken by him were within the scope of the subject matter over which he had general jurisdiction, and that he was not personally liable for an honest error of judgment in respect thereto. The United States Fidelity and Guaranty Company, surety on Latimer's bond, in a separate answer, adopted the answer of its principal. The answers filed by the members of the county board of education and the sureties on their bonds followed in main outlines the answer filed by the defendant I. M. Latimer.

The chancellor, after hearing the testimony offered on behalf of the respective parties, embodied in a carefully prepared opinion his findings of fact and his conclusions of law, which have been made a part of the record on this appeal. The chancellor found that the complainant was entitled to recover from the defendant I. M. Latimer and the surety on his official bond the sum of $3,307.13 on items listed in Exhibit ''G'' as expenditures paid out of the county school funds for services and materials which the county did not receive. The chancellor was of the opinion that the complainant had failed to meet the burden of proof resting upon him to prove his right to recover the remaining items listed in Exhibit ''G''. The chancellor found that the complainant was entitled to recover from the defendant Latimer and the surety on his official bond $361.25 of the $401.25 listed in Exhibit ''H'' as moneys paid to the defendant I. M. Latimer, for the benefit of the county schools, by school districts or individuals for sales of materials or for use of county buses, where the moneys were never received by the county. The chancellor found that the complainant was entitled to recover from the defendant Latimer, and the members of the county board of education and the sureties on their bonds, the sum of $320.47 for payments made to George Posey, while

he was a member of the county board of education, for merchandise purchased from him, as shown in Exhibit "I".

The chancellor rejected the complainant's claim for the recovery of the $1,874.61 for the items listed in Schedule "J", being warrants alleged to have been issued for payments to teachers, payable out of the "Minimum Program Teachers' Salary fund," in excess of the amounts provided for in Section 2(a) (1) of Chapter 14, Laws of 1953, Extraordinary Session (Section 6248-2 (a) (1), Code of 1942, Rec.).

The chancellor found that the complainant was entitled to recover from the defendant Latimer and the surety on his bond the sum of $2,360.39 of the total amount of $35,861.96 sought to be recovered on account of the items listed in Exhibit "L", under the heading "Statement of Obligations and Expenditures in Excess of Available Funds," as of January 2, 1956. The amount which the chancellor held that the complainant was entitled to recover, represented the amount of the excess of minimum program fund expenditures over minimum program fund receipts for the fiscal year ending June 30, 1956; and the chancellor held that the defendant, I. M. Latimer, and his surety were liable for that amount. The chancellor held that the members of the county board of education were not jointly liable with the defendant Latimer for the said excess of expenditures over receipts for the fiscal year, for the reason that the greatest single item of excess of expenditures over receipts occurred in the payment of teachers' salaries, and according to the testimony teachers' salaries were paid by the county superintendent of education without prior allowance of each specific claim by the county board of education, pursuant to the provisions of Section 4, Chapter 16, Laws of 1953, Extraordinary Session (Section 6274-04, Code of 1942, Rec.), which authorizes such payments where the amount has been previously approved by a contract or by an order of the county board of

education. The chancellor was of the opinion that the complainant was entitled to recover the above mentioned sum of $2,360.39 under the provisions of Section 11, Chapter 27, Laws of 1953, Extraordinary Session (Section 6534-11, Mississippi Code of 1942, Rec.), which specifically provides for personal liability on the part of the county superintendent of education for expenditures made for school purposes in excess of funds available for such purposes for the fiscal year. The chancellor stated that, in his opinion, under Code Section 6534-11, the state auditor was not entitled to recover an item of $22,485.66 listed in Exhibit "L", which represented the aggregate of a long list of claims against the county school funds, which had never been docketed or allowed, but were shown only as unpaid invoices for materials and supplies billed to the county department of education. The chancellor was of the opinion that the claims were not enforceable against Neshoba County, under the holding of this Court in Board of Supervisors of Lafayette County v. Parks, 220 Miss. 403, 71 So. 2d 197. As to the sum of $15,076.37, referred to in Exhibit "L" as "overdraft in bank account for Minimum Program and other county-wide funds at June 30, 1956, all applicable to January 2, 1956," which the claimant charged represented an excess of expenditures over receipts for the fiscal year ending June 30, 1956, the record showed that there was a deficit on July 1, 1955, in the amount of $12,715.98; and by subtracting that deficit from the $15,076.37, it appeared that the actual expenditures during the fiscal year over receipts amounted to only $2,360.39.

The chancellor appears to have made no specific reference in his findings to Warrant No. 4250, issued by the defendant Latimer as county superintendent of education to Barefield & Company in the amount of $1146, which the complainant alleged was actually issued for the purchase price of new office furniture.

The total amount of the items for which the chancellor allowed recovery against the defendant I. M. Latimer and the surety on his official bond after making necessary adjustments to avoid duplications of recovery was $4,850.12. To that amount there was added interest, which made a total judgment against Latimer and the surety on his bond for the sum of $5,749.14. The recovery against the members of the county board of education and the surety on their official bonds was limited to the one item of $320.48 listed in Exhibit "I", and judgment for that amount, with interest, making a total of $379.87, was entered against I. M. Latimer and the members of the county board of education.

In the final decree adjudging liability against the defendants for the above stated amounts, it was further ordered that all claims against the defendant I. M. Latimer and the other named defendants be dismissed; and from that decree the complainant prosecutes this appeal.

The appellant's attorney has assigned and argued several points as ground for reversal of the decree of the lower court.

It is first argued that the court erred in denying complainant the right to recover certain salary allowances listed in Exhibit "G" to the bill of complaint, made by I. M. Latimer, county superintendent of education, to Carolyn Cox and Sue Posey as salary allowances for clerical help in the office of the county superintendent of education. These items include three warrants issued to Carolyn Cox for the total sum of $362.22 for services rendered during the months of May, June and September 1955, and five warrants issued to Sue Posey for the total sum of $616.16 for services rendered during the months of January, October and December 1954, and June 1955. The record shows that there was no order on the minutes of the county board of education authorizing the employment of the additional help in the office of the county superintendent on a part

time basis. It is therefore argued on behalf of the appellant that the employment of the clerical help referred to above was violative of Section 6252-12, Mississippi Code of 1942, Rec.) Chapter 276, Laws of 1956), which provides that "The county board of education shall indicate on its minutes the number of persons which may be employed as clerical help * * * and shall fix the compensation to be paid to the persons so employed." But we think there was no error in the chancellor's refusal to permit recovery of those items. The section of the code referred to was enacted in its present form as an amendment to Section 12, Chapter 19, Laws of 1953, Extraordinary Session, which contained no express requirement that the county board of education should indicate on its minutes the number of persons which might be employed as clerical help; and, although the authority of the county superintendent of education to employ such clerical help should have been shown on the minutes of the county board of education under the statute as it existed prior to the enactment of the 1956 amendment, we think that the irregularity in the employment of the clerical help in this case, under the facts disclosed by the record, was not such irregularity as to impose personal liability upon the county superintendent for the repayment of the salaries paid to the employees named, and that there was no error in the chancellor's refusal to permit recovery of the items mentioned.

 It is next argued that the court erred in denying to the complainant the right to recover for two items listed in Schedule "G" as salary allowances made by I. M. Latimer, county superintendent of education, to W. H. Foster on July 12, 1955, in the amount of $204.17, and to James Ratten on September 13, 1954, in the amount of $176.38. It is argued on behalf of the appellant that the warrant issued to W. H. Foster on July 12, 1955, represented either a payment of salary for the preceding school year or an advance payment for the

1954-1955 school session which had not begun at the time the warrant was issued, and that in either event the warrant represented an illegal payment; and a similar argument is made concerning the issuance of the warrant to James Ratten on September 13, 1954. But in the absence of more specific proof that the warrants mentioned represented payments in excess of salaries contracted to be paid, or for services not rendered by the payee named therein, we are unable to say that the chancellor was wrong in denying recovery for those two items.

It is next argued that the court erred in refusing to allow complainant to recover two payments of interest made by I. M. Latimer, county superintendent of education, to the Citizens Bank on January 18, 1955, in the sum of $34.17, and to the bank of Philadelphia on January 21, 1955, in the sum of $13.53. We think the court erred in refusing to permit recovery by the complainant of the interest items referred to. The Legislature has not authorized the county superintendent of education to borrow money for the payment of current expenses in anticipation of taxes or for any other purpose, and to pay interest on such indebtedness out of the county school funds, or to pay interest to banks on overdrafts. Such authority has been conferred by Section 6532-13, Mississippi Code of 1942, Rec. (Sec. 1, Ch. 415, Laws of 1952, as amended by Ch. 277, Laws of 1954), on the governing authorities of any municipality on behalf of municipal separate school disricts, or the board of supervisors of any county on behalf of other school districts, upon the receipt of a written request signed by a majority of the school trustees of any such school district. But no such authority has been conferred on the county superintendent of education.

It is next argued that the court erred in denying to the complainant the right to recover the sum of $1,-874.61 representing payments listed in Exhibit ''J'' to the bill of complaint as payments made to teachers out

of the Minimum Program Teachers' Salary Fund, in excess of the amounts provided for in Section 2(a) (1) of Chapter 14, Laws of 1953, Extraordinary Session (Section 6248-02, Code of 1942, Rec.). It was stipulated at the beginning of the hearing that the facts set forth in Exhibit "J", as to the excess payments listed, were admitted with the exception of the excess payment of $235.74 made to Mrs. Verna Pippin. It is argued on behalf of the appellant that the payments listed in said Exhibit "J" were payments made in violation of Section 92 of the Mississippi Constitution of 1890, and in violation of Section 6248-02, Mississippi Code of 1942, Recompiled, in that the payments in each case were payments in excess of the amounts authorized to be paid the teachers named, and that the complainant was entitled to recover the full amount of the payments listed. The appellee's attorneys argue on the other hand that the payments, although erroneous, were made over payments made to the teachers in excess of the amounts provided for in Code Section 6248-02, supra, as a result of mistake; that nowhere in the statute is there a provision that the county superintendent of education or the surety on his official bond shall be civilly liable for the action of the county superintendent in paying to teachers amounts in excess of that authorized in the schedule of salaries found in the 1953 school laws; and that, under the rule of liability laid down in State to Use of Lincoln County v. Green, 111 Miss. 32, 71 So. 172, where the officer acts in good faith in a matter over which he has jurisdiction, and the payments actually made are for objects for which an appropriation is authorized, he is not civilly liable for making such payments.

We think the chancellor erred in his holding that there was no liability on the part of the county superintendent of education for the issuance of the teachers' warrants listed in said Exhibit "J".

It is true that in State to Use of Lincoln County v. Green, supra, the Court held that the county superin-

tendent was vested with large administrative powers and that neither he nor his bondsmen were liable for errors of judgment and discretion in the absence of fraud, though by reason of such errors he paid out more money to teachers than they were legally entitled to, the work for which he paid being within the jurisdiction of his office. And in National Surety v. Miller, 155 Miss. 115, 124 So. 251, the Court held that a public board and the members thereof, so long as they act in good faith and from honest motives, and there is no express statute making them liable, are to be protected from the consequences of an erroneous decision when the matter upon which the action was taken was one belonging to the general class of cases within the cognizance of such board, or as otherwise termed within the scope of the subject matter over which the board has jurisdiction. The same general principle was reaffirmed in Barnett v. Lollar, 197 Miss. 574, 19 So. 2d 748. But the Court in the Lollar case, in its opinion, said:

"What we have hereinbefore said in discussing the first of these questions deals with the general principles. We are not to be understood as holding, as respects the expenditure of public funds, that any payment, whatever it is, will be without any personal liability on the part of the officer if only the purpose of the payment was somewhere within the general field of his jurisdiction. A payment may be within that general field and yet so clearly and distinctly one which the officer could not lawfully make as to bar him from justification in taking the position that he did it in good faith and honest error."

It must be noted here that, in the enactment of the 1953 school laws, in which the state has practically underwritten the cost of a minimum school program, more stringent regulations have been provided for the administration of the county school system, and county superintendents have been divested of much of their

discretionary power vested in them under the earlier statutes.

Section 2(a) of Chapter 14, Laws of 1953, Extraordinary Session, expressly provides that the allowance in the minmum education program for teachers' salaries "shall be determined and paid in accordance with the scale of teachers' salaries as provided herein for the number of teachers employed not in excess of the number of teacher units allotted * * *."

The statute then sets forth the scale of salaries which shall be followed, and the statute further provides in said Section 2(a) (1-d) as follows: "The amount allotted for teachers' salaries by the state board of education and the amount actually paid to each teacher shall be based upon and determined by the type of certificate held by such teacher in the field in which he is teaching."

Section 15, Chapter 20, Laws of 1953, Extraordinary Session (Section 6282-15, Code of 1942, Rec.), provides that: "It shall be unlawful for any superintendent, principal or teacher to be paid for any services as such until a written contract has been executed as is provided and required by this act, and if any county superintendent or municipal separate school district superintendent shall make any such payment prior to the execution of the contract he shall be civilly liable for the amount thereof, and, in addition, the county superintendent shall be liable upon his bond. * * *"

It is true that the excessive payments of teachers' salaries was within the general field of the county superintendent's jurisdiction, but, as this Court stated in Barnett v. Lollar, supra, a payment may be "within that general field and yet so clearly and distinctly one which the officer could not lawfully make as to bar him from justification in taking the position that he did it in good faith and honest error."

Latimer was questioned about the excessive payments to the teachers listed in Exhibit "J". He was unable

to make any intelligent explanation of the overpayment, except to say that "It is easy to make an error." In our opinion the overpayments by Latimer of teachers' salaries paid out of the funds provided in the minimum education program, as shown in Exhibit "J", were so clearly and distinctly payments which the county superintendent could not lawfully make as to bar him from justification in taking the position that he did it in good faith and honest error. Latimer stated, however, that the warrant issued to Mrs. Verna Pippin for $235.74 was issued as a duplicate to take the place of another warrant which she said she had lost; that the warrant had not been cleared at the bank at the time of the trial; and that the bank had a letter advising them not to pay it. The complainant offered no evidence to refute that statement, and we think the amount of that warrant should have been deducted from the total sum claimed under Exhibit "J", which amounted to $1,-874.61, and that a decree should have been rendered in favor of the complainant for the balance of the amount sued for under the heading of "payments to teachers from minimum teachers' salary fund in excess of the amounts provided for in Sec. 2(a)(1), Ch. 14, Laws Ex. Ses. 1953."

It is next argued that the court erred in denying the Complainant's right to recover the amount paid to Barefield & Company on warrant No. 4250 which was drawn on the "other current cost" funds account, in payment of office furniture. We think the complainant was entitled to recover the amount paid on that warrant. Section 1(n) of Chapter 14, Laws of 1953, Extraordinary Session, provides that, "The term 'other current costs' shall include instructional supplies, maintenance and operation of the plant, janitor's service, and other items necessary for operating schools not inconsistent with prevailing statutes other than those specified items enumerated in subsection (f) of this Section."

██ █ Section 3 of Chapter 19, Laws of 1953, Extraordinary Session (Section 6252-03, Code of 1942, Rec.), provides that an office shall be provided for the county superintendent at the county site, and that the cost of "necessary supplies, books, fuel, office furniture, printing stationery and postage used by the superintendent of education in the discharge of his official duties shall be paid for out of the general county fund on the allowance of the board of supervisors, but an allowance therefor shall not be made until an itemized account is presented with the affidavit of the superintendent as to its correctness attached thereto." The payment of the $1,146.00 out of the "other current costs" fund for office furniture for the office of the county superintendent of education, was clearly a payment by the county superintendent of education of minimum school funds for an object not authorized by law.

██ █ Finally, it is contended that the court erred in denying the complainant a recovery on the mass of invoices listed in Exhibit "L" to the bill of complaint, under the heading "List of Outstanding Commitments not Docketed or Allowed January 2, 1956." The list shows nothing more than invoice dates, names and addresses of vendors, and the amounts of the claims. E. Y. Pettus, an auditor with the State Department of Audit, testified that the invoices for the claims listed were found in the office of the county superintendent. There were invoices supporting all of the items. The invoices had not been docketed or allowed by the county board of education. No attempt appears to have been made by either of the parties to show that the invoices represented merchandise and supplies actually delivered, or that the claims were valid claims against the county; and we think it cannot be said that the chancellor erred in denying the complainant's right to recover on that item.

For the reasons stated above the decree of the lower court will be reversed and the cause remanded for furth-

er proceeding not inconsistent with what has been said above.

Reversed and remanded.

*McGehee, C. J., Hall, Lee, Arrington, Ethridge* and *Gillespie, JJ.,* concur.